[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-14535; 11-14675
_____

D.C. Docket No. 5:11-cv-02484-SLB


HISPANIC INTEREST COALITION OF ALABAMA,
AIDS ACTION COALITION,
HUNTSVILLE INTERNATIONAL HELP CENTER,
INTERPRETERS AND TRANSLATORS ASSOCIATION OF ALABAMA,
ALABAMA APPLESEED CENTER FOR LAW & JUSTICE, INC.,
SERVICE EMPLOYEES INTERNATIONAL UNION,
SOUTHERN REGIONAL JOINT BOARD OF WORKERS UNITED,
UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION,
LOCAL 1657 UNITED FOOD AND COMMERCIAL WORKERS
INTERNATIONAL UNION,
DREAMACTIVIST.ORG,
GREATER BIRMINGHAM MINISTRIES,
BOAT PEOPLE SOS,
MATT WEBSTER,
MARIA D. CEJA ZAMORA,
PAMELA LONG,
JUAN PABLO BLACK ROMERO,
CHRISTOPHER BARTON THAU,
ELLIN JIMMERSON,
ROBERT BARBER,
DANIEL UPTON,
JEFFREY ALLEN BECK,
MICHELLE CUMMINGS,
ESAYAS HAILE,

FISEHA TESFAMARIAM,
JANE DOE,
#1, allowed by order [103],
JANE DOE,
#2, allowed by order [103],
JANE DOE,
#3, allowed by order [103],
JANE DOE,
#4, allowed by order [103],
JANE DOE,
#5, allowed by order [103],
JANE DOE,
#6, allowed by order [103],
JOHN DOE,
#1, a minor, by his legal guardian Matt Webster,
allowed by order [103],
JOHN DOE,
#2, allowed by order [103],
JOHN DOE,
#3, allowed by order [103],
JOHN DOE,
#4, allowed by order [103],
JOHN DOE,
#5, allowed by order [103],
JOHN DOE,
#6, allowed by order [103]

                              Plaintiffs - Appellants
                              Cross Appellees,


versus

GOVERNOR OF ALABAMA,
ATTORNEY GENERAL, STATE OF ALABAMA,
ALABAMA STATE SUPERINTENDENT OF EDUCATION,
ALABAMA CHANCELLOR OF POSTSECONDARY EDUCATION,
DISTRICT ATTORNEY FOR MADISON COUNTY,

                              Defendants - Appellees

Cross Appellants,

SUPERINTENDENT OF HUNTSVILLE CITY SCHOOL SYSTEM, et al.,

Defendants - Appellees,

CENTRAL ALABAMA FAIR HOUSING CENTER,
FAIR HOUSING CENTER OF NORTHERN ALABAMA, et al.,

Amicus Curiae.

_____

Appeals from the United States District Court
for the Northern District of Alabama

_____

(August 20, 2012)

Before WILSON and MARTIN, Circuit Judges, and VOORHEES,[*] District Judge.

WILSON, Circuit Judge:

This appeal presents the challenges of private plaintiffs to various

provisions of Alabama's House Bill 56, the "Beason–Hammon Alabama Taxpayer

and Citizen Protection Act" (H.B. 56). Relevant to this appeal, the plaintiffs here

(the HICA Plaintiffs) brought suit against defendants (the State Officials)

contending that sections 8, 10, 11(a), 12(a), 13, 18, 27, 28, and 30[1] are preempted

_____

[*] Honorable Richard L. Voorhees, United States District Judge for the Western District of North Carolina, sitting by designation.

[1] Consistent with how this case has been presented, we reference the originally designated sections of H.B. 56 rather than the Alabama Code section where the provisions are currently

3

by federal law; that section 28 violates the Equal Protection Clause; and that the last sentence of sections 10(e), 11(e), and 13(h) violates the Compulsory Process Clause.[2]  In the companion case brought by the United States, we have concluded that preliminary injunction of sections 10, 11(a), 13(a), and 27 is appropriate, and that injunction of sections 12, 18, and 30 is not supportable at this stage of litigation.[3]  *See United States v. Alabama*, Nos. 11-14532, 11-14674.  The operation of those sections and rationale for our disposition are set forth fully in the companion case, and herein we address the HICA Plaintiffs' challenges not already covered in that opinion.[4]

Section 8 provides that an unlawfully present alien "shall not be permitted

---

housed.

[2] Additional provisions that were unsuccessfully challenged in the district court are not contested here.  Furthermore, the district court's ruling concerning section 13 is not contested in this appeal.

[3] In briefing filed after the decision in *Arizona v. United States*, 567 U.S. ___, 132 S. Ct. 2492 (2012), the HICA Plaintiffs maintain that sections 12 and 18 are preempted as requiring extended detention to conduct immigration status checks.  As we stated in the United States's companion case, however, *Arizona* instructs that a facial challenge is premature insofar as the statutes could be construed not to require unlawful detention.  We therefore reject the HICA Plaintiffs' arguments to the contrary and affirm the district court's decision regarding sections 12 and 18.  Additionally, to the extent that the HICA Plaintiffs now challenge a portion of section 19, we do not consider that argument, which was raised for the first time in the post-*Arizona* supplemental briefing.  Finally, for the reasons stated in the United States's companion case, we do not find at this time that section 30 is facially invalid.

[4] Insofar as the HICA Plaintiffs argue that sections 10 and 27 are preempted, we dismiss the appeal as moot in light of our ruling in the companion case.

4

to enroll in or attend any public postsecondary education institution" in Alabama. Ala. Code § 31-13-8. In order to execute this prohibition, officers of those institutions may "seek federal verification of an alien's immigration status with the federal government" pursuant to 8 U.S.C. § 1373(c) but cannot independently make a final determination about the immigration status of an alien. *Id.* Section 8 also renders unlawfully present aliens ineligible for "any postsecondary education benefit, including, but not limited to, scholarships, grants, or financial aid" not otherwise required by law. *Id.*

Sections 10(e), 11(e), and 13(h) each prescribe the means by which a conviction for the corresponding criminal provision may be attained. Each section ends in a common sentence mandating that the Alabama courts "shall consider only the federal government's [§ 1373(c)] verification in determining whether an alien is" lawfully present in the United States, Ala. Code §§ 31-13-10(e), -13(h), or authorized to work, *id.* § 31-13-11(e).

Section 28 provides a process for schools to collect data about the immigration status of students who enroll in public school. Schools are required to determine whether an enrolling child "was born outside the jurisdiction of the United States or is the child of an alien not lawfully present in the United States." *Id.* § 31-13-27(a)(1). That determination is made based on the birth certificate of

5

the child. *Id.* § 31-13-27(a)(2). If none is available, or if the certificate reflects that "the student was born outside . . . the United States or is the child of an alien not lawfully present in the United States," then the enrolling child's parent or guardian must notify the school of the "actual citizenship or immigration status of the student under federal law." *Id.* § 31-13-27(a)(3). This notification consists of (a) official citizenship or immigration documentation and (b) an attestation under penalty of perjury that the document identifies the child. *Id.* § 31-13-27(a)(4). If the statutory notification is not provided, then the student is presumed to be "an alien unlawfully present in the United States." *Id.* § 31-13-27(a)(5).

Before H.B. 56 became effective, the HICA Plaintiffs, along with the United States, filed suit to invalidate certain provisions of the law. The HICA Plaintiffs moved to preliminarily enjoin the operation of numerous provisions of the law, and the district court consolidated its case with the related suit brought by the United States for purposes of deciding the injunction. Relevant here, the district court enjoined sections 8, 11(a), and 13 as preempted by federal law and sections 10(e), 11(e), and 13(h) as violative of the Compulsory Process Clause. It also found that none of the HICA Plaintiffs had standing to challenge section 28.

Both sides appealed. The United States and HICA Plaintiffs contested the district court's denial of a preliminary injunction, and Alabama cross-appealed the

district court's grant of preliminary injunctive relief. After filing its notice of appeal, the United States and HICA Plaintiffs sought from this court an injunction pending appeal to prevent enforcement of the sections for which the district court denied an injunction. A panel of this court granted in part the motion for injunction pending appeal, enjoining enforcement of sections 10 and 28. Later, after briefing and oral argument, we modified the injunction pending ultimate disposition of this appeal and enjoined enforcement of sections 27 and 30.

Having closely considered the positions and new briefing of the parties in light of the recent decision in *Arizona v. United States*, 567 U.S. ___, 132 S. Ct. 2492 (2012), we affirm in part, reverse in part, and vacate in part the order of the district court, and we dismiss parts of the HICA Plaintiffs' appeal as moot. Specifically, we affirm the district court with respect to the challenges to sections 12, 18, and 30. We further conclude that at least one organization has standing to challenge section 28 and that the HICA Plaintiffs are likely to succeed on the claim that section 28 violates the Equal Protection Clause. Therefore, we reverse the district court's decision regarding this section and remand for the entry of a preliminary injunction. Because the Alabama legislature has eliminated the challenged language from section 8, we vacate as moot the district court's injunction of that provision and remand for the dismissal of the challenge to that

section.[5] In light of our decision regarding the substantive provisions of sections 10, 11, and 13, we vacate as moot the district court's injunction of the last sentence of sections 10(e), 11(e), and 13(h). Finally, because we find sections 10 and 27 preempted in the companion case brought by the United States, we dismiss as moot the HICA Plaintiffs' appeal as to these sections.

## I.  Standard of Review

We review a district court's grant of a preliminary injunction for abuse of discretion. *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998). Legal determinations underlying the grant of an injunction are reviewed *de novo*, and factual determinations are reviewed for clear error. *Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*, 304 F.3d 1167, 1171–72 (11th Cir. 2002).

## II.  Discussion

A preliminary injunction may be granted to a moving party who establishes "(1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest."

---

[5] In the United States's companion case, we found a likelihood of success on the preemption claims made against sections 10, 11(a), 13(a), 16, 17, and 27.

8

*Robertson*, 147 F.3d at 1306. We address these factors in turn, focusing in particular on the most contested determination—whether the HICA Plaintiffs are likely to succeed on their claims.

A. Likelihood of Success on the Merits

1. Section 8

As originally enacted, section 8 prohibited a wide array of aliens from attending public postsecondary educational institutions in Alabama. The first sentence of that section prohibited enrollment of "[a]n alien who is not lawfully present in the United States." Ala. Code § 31-13-8. The second sentence, however, expressly limited enrollment to aliens who "possess lawful permanent residence or an appropriate nonimmigrant visa under 8 U.S.C. § 1101, et seq." *Id.* The district court enjoined section 8 in its entirety on the ground that it constituted an unconstitutional classification of aliens. Since that ruling, the Alabama legislature has amended section 8 to remove the second sentence entirely, which was understood to define lawful presence as requiring lawful permanent residence or a nonimmigrant visa.

There is no doubt that "[t]he States enjoy no power with respect to the classification of aliens." *Plyler v. Doe*, 457 U.S. 202, 225, 102 S. Ct. 2382, 2399 (1982) (citing *Hines v. Davidowitz*, 312 U.S. 52, 61 S. Ct. 399 (1941)). In its

9

complaint and briefs, HICA challenges the classification of—not the underlying prohibition on—unlawfully present aliens who seek to attend an educational postsecondary institution.  Complaint at ¶¶ 217–220 (charging that section 8 "impermissibly discriminates between citizens and lawfully residing noncitizens, and among groups of lawfully residing noncitizens"); Appellants' Cross-Appellees' Reply/Response Br. at 48 (urging correctness of the district court's ruling on the merits that section 8 "creates an unlawful state classification of aliens").  The complained-of sentence, which the district court concluded ran afoul of federal law and Supreme Court precedent, *see Plyler*, 457 U.S. at 225, 102 S. Ct. at 2399, has been removed by the state legislature.  Because section 8 has been "amended so as to remove its challenged feature[]," the HICA Plaintiffs' claim for injunctive relief has no basis in the present statute.  *Naturist Soc'y, Inc. v. Fillyaw*, 958 F.2d 1515, 1520 (11th Cir. 1992).  We therefore vacate the district court's injunction of section 8 as moot and remand for the dismissal of the challenge.

> 2.    Sections 10(e), 11(e), and 13(h)

The HICA Plaintiffs claim that the final sentences of sections 10(e), 11(e), and 13(h) violate the Compulsory Process Clause of the Sixth Amendment.  We need not reach the merits of this contention in light of our ruling in the United States's companion case that sections 10, 11(a), and 13(a) are preempted.  The

10

challenged provisions limiting the evidentiary presentation for violations of those provisions will not be applied because the underlying criminal prohibitions are unenforceable. We therefore vacate the district court's injunction of these specific sentences as moot.

### 3.    Section 28

The HICA Plaintiffs challenge the district court's threshold finding that none of the individuals or organizations had standing to challenge section 28. We agree with Plaintiffs that at least one organization has standing to challenge this provision. We further conclude that the HICA Plaintiffs are likely to succeed on their claim that section 28 violates the Equal Protection Clause.

#### a.    Standing

"'[A]n organization has standing to sue on its own behalf if the defendant's illegal acts impair its ability to engage in its projects by forcing the organization to divert resources to counteract those illegal acts.'" *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1350 (11th Cir. 2009) (quoting *Fla. State Conference of the NAACP v. Browning*, 522 F.3d 1153, 1165 (11th Cir. 2008)). In *Common Cause*, we found that an organizational plaintiff suffered cognizable injury when it was forced to "divert resources from its regular activities to educate and assist [affected individuals] in complying with the [challenged] statute." *Id. Browning* presented

11

an injury similar to that in *Common Cause*, and we found organizational standing proper in that case on the ground that the organizations "reasonably anticipate[d] that they [would] have to divert personnel and time to educating volunteers and [affected individuals] on compliance" with the statute's requirements. 522 F.3d at 1165–66.

Here, Plaintiff Alabama Appleseed Center for Law & Justice, Inc. has claimed injuries analogous to those present in *Common Cause* and *Browning*. John A. Pickens, the Executive Director of Alabama Appleseed, submitted declarations to explain the manner in which H.B. 56, and particularly section 28, has affected and will continue to affect his organization. Pickens declared that many of the inquiries received by the organization were prompted by the passage of H.B. 56 and related to the education provision at issue, including questions about how to enroll children in school, whether children should be enrolled, how schools will use the information collected, and whether parents will suffer immigration consequences as a result of a child's enrollment. In response to the passage of H.B. 56, Alabama Appleseed has hosted presentations to convey information about the consequences of the law, including its education provision. Furthermore, the time and money expended on the planning and execution of these events has forced the organization to divert resources from other immigration

12

policy work.  According to Pickens, these endeavors "will continue to be detrimentally impacted" as they will have to be "substantially curtail[ed] or stop[ped]."  These alleged injuries are sufficient under our precedent to confer standing on Alabama Appleseed.[6]  *See Common Cause*, 554 F.3d at 1350; *Browning*, 522 F.3d at 1165–66.

> b.    Merits

Section 28 requires every public elementary and secondary school within Alabama to determine upon enrollment whether the enrolling child "was born outside the jurisdiction of the United States or is the child of an alien not lawfully present in the United States."  Ala. Code § 31-13-27(a)(1).  The school must make this determination by examining the birth certificate the student has presented.  *Id.* § 31-13-27(a)(2).  If the birth certificate reveals "that the student was born outside the jurisdiction of the United States or is the child of an alien not lawfully present in the United States," or if the birth certificate is unavailable, then the child's guardian must within thirty days notify the school of the "actual citizenship or immigration status of the student under federal law."  *Id.* § 31-13-27(a)(3); *see*

---

[6] Because one plaintiff with standing is sufficient to permit our review of the constitutionality of section 28, we proceed to address the merits without regard to the standing of other individuals or organizations.  *See Florida v. U.S. Dep't of Health & Human Servs.*, 648 F.3d 1235, 1243–44 (11th Cir. 2011), *rev'd in part on other grounds*, 567 U.S. ___, 132 S. Ct. 2566 (2012).

13

*also id.* § 31-13-27(a)(4) (setting forth the notification procedure).  If the notification procedure laid out in the statute is not satisfied, then "the school official shall presume for the purposes of reporting under this section that the student is an alien unlawfully present in the United States."  *Id.* § 31-13-27(a)(5).  Public disclosure of information that identifies a student is prohibited "except for purposes permitted pursuant to 8 U.S.C. §§ 1373 and 1644."  *Id.* § 31-13-27(e).

The Equal Protection Clause of the Fourteenth Amendment "direct[s] that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 3254 (1985).  Practically, though, "most legislation classifies for one purpose of another, with resulting disadvantage to various groups or persons."  *Romer v. Evans*, 517 U.S. 620, 631, 116 S. Ct. 1620, 1627 (1996).  In light of this reality, certain statutory classifications require more exacting scrutiny when the court reviews their compatibility with the mandate of the Equal Protection Clause.  *See Cleburne Living Ctr.*, 473 U.S. at 440–42, 105 S. Ct. at 3254–55 (summarizing constitutionally protected classifications and providing the character of judicial scrutiny to be applied on review).

Apart from certain classifications, the Supreme Court has recognized that where a statute significantly interferes with the exercise of a protected right, it

14

must also be reviewed under a similarly heightened level of scrutiny. *See, e.g.*, *Zablocki v. Redhail*, 434 U.S. 374, 388, 98 S. Ct. 673, 682 (1978) (addressing equal protection in the context of the right to marry); *Mem'l Hosp. v. Maricopa Cnty.*, 415 U.S. 250, 262 n.21, 94 S. Ct. 1076, 1084 (1974) (context of the right to interstate travel); *Kramer v. Union Free Sch. Dist. No. 15*, 395 U.S. 621, 626–28, 630, 89 S. Ct. 1886, 1889–90, 1891 (1969) (context of the right to vote); *see also Vacco v. Quill*, 521 U.S. 793, 799, 117 S. Ct. 2293, 2298 (1997) (utilizing the rational basis standard to review New York statutes governing the right to physician-assisted suicide because they involved neither a protected right nor a suspect classification).

Together, the specific interplay between the types of individuals affected by the statute and the deprivation at issue may justify requiring a heightened level of scrutiny to uphold the statute's categorization. *See Plyler*, 457 U.S. at 223–24, 102 S. Ct. at 2398 (explaining that Texas's law preventing unlawfully present children from obtaining a free public education "can hardly be considered rational unless it furthers some substantial goal of the State"); *id.* at 235, 102 S. Ct. at 2404 (Blackmun, J., concurring); *id.* at 238, 102 S. Ct. at 2406 (Powell, J., concurring); *cf. Emp't Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 881, 110 S. Ct. 1595, 1601 (1990) (collecting cases to illustrate that statutes implicating a

15

combination of protected rights are comparatively less likely to survive review); *Wisconsin v. Yoder*, 406 U.S. 205, 223, 92 S. Ct. 1526, 1542 (1972) ("[W]hen the interests of parenthood are combined with a free exercise claim of the nature revealed by this record, more than merely a 'reasonable relation to some purpose within the competency of the State' is required to sustain the validity of the State's requirement . . . .").

The State Officials assert that heightened scrutiny is not warranted because section 28 is only a means to collect data, which does not implicate any right protected by the Equal Protection Clause.[7]  *See, e.g.*, *Morales v. Daley*, 116 F. Supp. 2d 801, 814–15 (S.D. Tex. 2000) (upholding the national census against a Fifth Amendment equal protection challenge).  This argument, though, does not conclusively resolve the whole of the equal protection inquiry before us.  Nor is it enough to argue that, unlike the statute at issue in *Plyler*, section 28 does not by its terms purport to deny an education to any child.  Our duty, instead, is to analyze whether section 28 operates in such a way that it "significantly interferes with the

---

[7] We reject the argument that the Equal Protection Clause is not triggered by section 28's reporting requirement.  "A violation of the equal protection clause may occur when a legislative body enacts a law which 'has a special impact on less than all the persons subject to its jurisdiction.'" *Price v. Tanner*, 855 F.2d 820, 822 (11th Cir. 1988) (quoting *New York City Transit Auth. v. Beazer*, 440 U.S. 568, 587–88, 99 S. Ct. 1355, 1367 (1979) (ellipsis omitted)).  A statute requiring children and their parents to reveal their immigration status upon enrollment in school certainly has a "special impact" on a subset of Alabama's population seeking to so enroll.

16

exercise of" the right to an elementary public education as guaranteed by *Plyler*. *Zablocki*, 434 U.S. at 383, 98 S. Ct. at 679. We conclude that it does and, further, find that no substantial state interest justifies the interference.

In *Plyler* the Supreme Court held that a Texas statute denying free public education to undocumented children violated the Equal Protection Clause. 457 U.S. at 230, 102 S. Ct. at 2401–02. The Court addressed the constitutional infirmities of the state's refusal to reimburse local school boards for the educational expenses of unlawfully present children as well as the requirement of local school boards that those children pay a tuition fee in order to attend public school. *See id.* at 215–16, 102 S. Ct. at 2394. In finding an equal protection violation, the Court emphasized the blamelessness of the children who were subject to the burden, *see id.* at 219–20, 102 S. Ct. at 2396, and underscored the importance of providing education free of "unreasonable obstacles to advancement on the basis of individual merit," *id.* at 222, 102 S. Ct. at 2397. In light of the "fundamental role" of education "in maintaining the fabric of our society," *id.* at 221, 102 S. Ct. at 2397, the Court required a heightened justification—a substantial interest of the state—in order to sustain the debilitating effects that a lack of education can have on the specific community of individuals affected by the law and the country as a whole, *id.* at 224, 102 S. Ct. at 2398.

17

The Court analyzed four goals that could arguably legitimize the statute, finding each insufficient to uphold the Texas law.  First, the Court quickly dismissed an interest in preservation of resources for the state's lawful residents as no more than "a concise expression of an intention to discriminate."  *Id.* at 227, 102 S. Ct. at 2400.  The Court next explained that the goal of deterring illegal immigration was not a sufficient goal to justify the law, recognizing that other means would be much more effective at accomplishing that objective.  *Id.* at 228–29, 102 S. Ct. at 2400–01 ("Charging tuition to undocumented children constitutes a ludicrously ineffectual attempt to stem the tide of illegal immigration, at least when compared with the alternative of prohibiting the employment of illegal aliens." (quotation marks and alteration omitted)).  Third, the Court clarified that undocumented children did not so burden the provision of educational resources as to require the statutory distinction from legally resident alien children.  *See id.* at 229, 102 S. Ct. at 2401.  Finally, it dismissed any distinction between documented and undocumented children in the context of which students might put their education to productive use within the state's territorial boundaries, *see id.* at 229–30, 102 S. Ct. at 2401.  The Court concluded by questioning the use of a law that works to promote "the creation and perpetuation of a subclass of illiterates," which would "surely add[] to the

18

problems and costs of unemployment, welfare, and crime." *Id.* at 230, 102 S. Ct. at 2402.

The State Officials differentiate *Plyler* on the ground that, by its terms, section 28 affects *every* child who enrolls in school.  It is true that the preliminary requirement of showing a birth certificate applies equally to each child, but that does not fully describe the operation of section 28.  The "special impact" challenged here is not an inability to show a birth certificate but the state-mandated disclosure of the immigration status of the child (and possibly his or her parents) upon enrollment.  Other sections of H.B. 56 compel the conclusion that, despite the characterization of the State Officials, section 28 targets the population of undocumented school children in Alabama.  For example, section 2 states that one of the goals of the bill is "to accurately measure and assess the population of *students who are aliens not lawfully present in the United States*."  Ala. Code § 31-13-2 (emphasis added).  Clearly, the law contemplates no interest in the birthplace of any child who is lawfully present, and the blanket requirement that all students show a birth certificate is simply a necessary means by which section 28 forces unlawfully present aliens to divulge their unlawful status.

Under the terms of section 28, the parent or guardian of any student who (1) is not lawfully present, (2) was born outside of the United States, or (3) cannot

19

produce a birth certificate "*shall* notify the school . . . of the actual citizenship or immigration status of the student under federal law."  Ala. Code § 31-13-27(a)(3) (emphasis added).  The form of this notification is also governed by statute and requires official documentation (or a notarized recognition of the documentation) in addition to a parental attestation under penalty of perjury verifying the identity of the child in order to satisfy school officials of a student's legal status.  *Id.* § 31-13-27(a)(4).  Undocumented children, obviously, cannot produce the requisite documentation to satisfy these criteria; likewise the failure to submit any required notification documents means that the school "shall presume . . . that the student is an alien unlawfully present in the United States."  *Id.* § 31-13-27(a)(5).  Consequently, section 28 operates to place undocumented children, and their families, in an impossible dilemma: either admit your unlawful status outright or concede it through silence.  In either scenario, the relevant state database will identify the student as an unlawfully present alien, even though that individual may be a "child enjoying an inchoate federal permission to remain."  *Plyler*, 457 U.S. at 226, 102 S. Ct. at 2399.

Compared to the tuition requirement struck down in *Plyler*, section 28 imposes similar obstacles to the ability of an undocumented child to obtain an education—it mandates disclosure of the child's unlawful status as a prerequisite

20

to enrollment in public school.  This hurdle will understandably deter this population from enrolling in and attending school because, as unlawfully present aliens, "these children are subject to deportation," and removal proceedings can be instituted upon the federal government being informed of their undocumented status.  *Id.*  Alabama learns of this status upon enrollment in school, and as fully explained below, federal statutes prohibit Alabama from restricting the disclosure of this information.  *See* 8 U.S.C. §§ 1373, 1644.  Moreover, revealing the illegal status of children could lead to criminal prosecution, harassment, and intimidation.[8]  *See Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1064–65 (9th Cir. 2004) (concluding that revealing the immigration status of the plaintiffs could lead to legal consequences and would likely deter them from exercising legal rights); *Liu v. Donna Karan Int'l, Inc.*, 207 F. Supp. 2d 191, 193 (S.D.N.Y. 2002).  We are of the mind that an increased likelihood of deportation or harassment upon

---

[8] It is this reality that has led federal courts—including the district court here—to permit the plaintiffs to proceed anonymously in immigration-related cases.  *See, e.g.*, *Lozano v. City of Hazelton*, 620 F.3d 170, 194–95 (3d Cir. 2010), *vacated*, 131 S. Ct. 2958 (2011) (vacating for further consideration in light of *Chamber of Commerce of the United States v. Whiting*, 563 U.S. ___, 131 S. Ct. 1968 (2011)); *Does I thru XXIII v. Advanced Tile Corp.*, 214 F.3d 1058, 1069 & n.11 (9th Cir. 2000); *Ga. Latino Alliance for Human Rights v. Deal*, No. 11-1804 (N.D. Ga. July 8, 2011) (order granting motion to proceed under pseudonyms); *see also Doe v. Frank*, 951 F.2d 320, 323–24 (11th Cir. 1992) (per curiam) (setting forth relevant factors to consideration of a motion to proceed under a pseudonym).  It is also relevant that the Supreme Court case to address the rights of undocumented children in education, *Plyler v. Doe*, involved plaintiffs who were allowed to proceed anonymously.

21

enrollment in school significantly deters undocumented children from enrolling in and attending school, in contravention of their rights under *Plyler*.[9]

The State Officials understandably counter that section 28 restricts the dissemination of the private information of these children and their families, which presumably would eliminate the risk of adverse immigration consequences. These privacy restrictions, however, are wholly ineffectual in themselves. Section 28 limits the public disclosure of information "except for purposes permitted pursuant to 8 U.S.C. §§ 1373 and 1644." Ala. Code. § 31-13-27(e). Sections 1373 and 1644, in turn, require Alabama to provide immigration-related information to the federal government and other states upon request and prohibit Alabama from restricting this transfer of information.[10] Any textual prohibition on revealing the

---

[9] Nor are we alone in arriving at this conclusion. Indeed, the Civil Rights Division of the Department of Justice has been conducting an investigation into the increased absentee rate of undocumented children that occurred immediately after the passage of H.B. 56—a rate that tripled. *See* Mary Orndorff, *DOJ Looks at State School Records*, Birmingham News, Nov. 5, 2011, at A1; Letter from Thomas E. Perez, Assistant Attorney General, to Dr. Thomas R. Bice, State Superintendent of Education (May 1, 2012).

[10] *See* 8 U.S.C. § 1373(a) ("Notwithstanding any other provision of Federal, State, or local law, a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual."); *id.* § 1373(b)(3) ("Notwithstanding any other provision of Federal, State, or local law, no person or agency may prohibit, or in any way restrict, a Federal, State, or local government entity from . . . [e]xchanging such information with any other Federal, State, or local government entity."); *id.* § 1644 ("Notwithstanding any other provision of Federal, State, or local law, no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from the Immigration and Naturalization Service information regarding

22

immigration status of the children and their families is of little comfort when federal law requires that disclosure upon request. Consequently, the risks that accompany revealing the illegal status of the school children is not mitigated by the ineffectual privacy restrictions of section 28.

Having concluded that section 28 substantially burdens the rights secured by *Plyler*, we may only uphold it if the provision "furthers some substantial state interest." 457 U.S. at 230, 102 S. Ct. at 2402. We note initially that, as the HICA Plaintiffs point out, the State Officials have only attempted to defend section 28 under the rational basis standard. This alone is sufficient to allow us to conclude that section 28 cannot be upheld because under heightened scrutiny, it is the state that bears the burden of demonstrating that the measure is constitutional. *See, e.g.*, *Mem'l Hosp.*, 415 U.S. at 262–63, 94 S. Ct. at 1084.

Even assuming that the various justifications offered by the State Officials are advanced in an attempt to survive heightened scrutiny, we find none to be convincing. First, the State Officials justify section 28 with the school-related legislative findings of H.B. 56. *See* Ala. Code § 31-13-2. The State Officials cite to the desire to collect data about "the costs incurred by school districts" to educate unlawfully present children in order "to accurately measure and assess"

---

the immigration status, lawful or unlawful, of an alien in the United States.").

23

the undocumented student population and "to forecast and plan for any impact" that their presence may have on the state's public-education program. *Id.* The briefing of the State Officials in the companion case, No. 11-14532, concedes that section 28 "is . . . unlikely to yield particularly precise data," thereby recognizing that the stated legislative purpose will probably not be effectuated by the data-collection provision.[11] Corrected Response Brief for Appellees at 53. Along those lines, it is difficult to fathom how admittedly inaccurate data would be used to forecast the needs and plan for impact of populations of undocumented school children, especially given that the population of interest cannot be denied a free public elementary or secondary education in the first place. *See Plyler*, 457 U.S. at 228–29, 102 S. Ct. at 2401. Aside from that, the State Officials have not suggested that the relevant data could not be obtained in any other way. The conclusion that Section 28 "unnecessarily impinge[s]" upon the children's rights

---

[11] The State Officials also argue that, "[t]o the extent that the count [s]ection 28 generates is not precise, that is only because the statute goes out of its way not to force parents or their students to release immigration-status information if they choose not to do so." *Hispanic Interest Coal. of Ala.*, Nos. 11-14535, 11-14675, Response Brief for Appellees at 58. We find this humanitarian justification implausible, given the mandatory language of section 28 that each school *shall* determine the immigration status of each student, that each parent *shall* inform the school of the child's status, and that each school *shall* label the student as unlawfully present in the event no paperwork is provided. The position of the State Officials is further undermined by section 6, which requires maximum enforcement of H.B. 56. Specifically, section 6 forbids state actors from restricting the enforcement of H.B. 56 "to less than the full extent permitted" therein, Ala. Code § 31-13-6(a), and provides for civil penalties in the event the law is not enforced to the maximum extent, *id.* § 31-13-6(d). *See also id.* § 31-13-6(f) (imposing a duty on all public employees to report violations of H.B. 56).

24

under *Plyler* is thus inescapable.  *Zablocki*, 434 U.S. at 388, 98 S. Ct. at 682.

The State Officials posit additional justifications at a general level, supposing that the data could be used to defend "litigation in which the costs of illegal immigration are at issue" or to "enlighten the public about the impacts of illegal immigration."  Although those might be legitimate state interests, the means chosen by Alabama "unnecessarily burden[s]" the children's right to a basic education.  *Mem'l Hosp.*, 415 U.S. at 263, 94 S. Ct. at 1084.  Again, the State Officials concede that the data collected through section 28 is inaccurate, and they have not otherwise suggested that the relevant data cannot be obtained in other ways.  In short, we do not find these justifications, which fit into the general category of "because we want to know," substantial enough to justify the significant interference with the children's right to education under *Plyler*.  We therefore conclude that section 28 violates the Equal Protection Clause.

B.    Equitable Factors

The equities favor enjoining the operation of section 28.  As explained above, that provision imposes a substantial burden on the right of undocumented school children to receive an education.  Alabama has no interest in enforcing a state law that is unconstitutional, and the interference with the educational rights of undocumented children is not a harm that can be compensated by monetary

25

damages. *See Scott v. Roberts*, 612 F.3d 1279, 1295 (11th Cir. 2010) ("An injury is irreparable 'if it cannot be undone through monetary remedies.'" (quoting *Cunningham v. Adams*, 808 F.2d 815, 821 (11th Cir. 1987))). In *Plyler*, the Supreme Court distinguished education as essential to maintaining "the fabric of our society" and noted "the lasting impact of its deprivation on the life of the child." 457 U.S. at 221, 102 S. Ct. at 2396, 2397. Given the important role of education in our society, and the injuries that would arise from deterring unlawfully present children from seeking the benefit of education, we conclude that the equities favor enjoining this provision.

## III.  Conclusion

Because we have found that the United States is likely to succeed on its claims that sections 10 and 27 are preempted, we dismiss the HICA Plaintiffs' appeal as to those sections as moot. We vacate as moot the district court's injunction of section 8 and remand for the dismissal of the challenge to that section, as the statutory amendment has removed the challenged language. In light of our decision on the substantive provisions of sections 10, 11, and 13, we vacate as moot the district court's order insofar as it preliminarily enjoins the last sentence of sections 10(e), 11(e), and 13(h). We find that at least one of the HICA Plaintiffs has standing to challenge section 28 and that section 28 violates the

Equal Protection Clause.  We therefore reverse the district court's decision and remand for the entry of a preliminary injunction.  Finally, we conclude, for the reasons stated in the United States's companion case, Nos. 11-14532, 11-14674, that the HICA Plaintiffs cannot succeed on the merits of their facial challenge to sections 12, 18, and 30 at this time.

**AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART, DISMISSED IN PART, AND REMANDED.**