PRYOR, Circuit Judge,
respecting the denial of rehearing en banc:
I write to respond to the dissents filed by three of my colleagues about the denial of a rehearing en bane. I continue to adhere to the view expressed by Judges Henry Friendly and Raymond Randolph that dissents from the denial of rehearing en banc, particularly where one did not participate in the decision, are “of dubious policy,” United States v. Shaygan, 676 F.3d 1237, 1238 (11th Cir.2012) (Pryor, J., respecting the denial of rehearing en banc) (quoting United States v. N.Y., New Haven & Hartford R.R. Co., 276 F.2d 525, 553 (2d Cir.1960) (Friendly, J., concurring in the denial of reh’g en banc, joined by Lumbard, C.J.)), and that “denials of rehearing en banc are best followed by silence,” id. (alteration omitted) (quoting Indep. Ins. Agents of Am. v. Clarke, 965 F.2d 1077, 1080 (D.C.Cir.1992) (Randolph, J.)). But my colleagues do not share that view, and their dissents should not go unanswered. Lest anyone doubt the correctness of our decision in this matter, I must respond to five misunderstandings in the dissents that follow.
I. BACKGROUND
Michael Morgan was one of “the principal leaders of an elaborate drug operation, dating back to 1988, that supplied, distributed and sold crack cocaine throughout Florida, Alabama, Mississippi, Georgia, and North and South Carolina.” United States v. Mothersill, 87 F.3d 1214, 1217 (11th Cir.1996). In the course of this drug operation, Morgan and his coconspirator, Patrick Howell, plotted to rob a drug dealer named Alfonso Tillman. Id. Another coconspirator, Paul Howell, rented a car, and Patrick Howell arranged to purchase one kilogram of cocaine from Tillman. Tillman left for the drug buy carrying the cocaine, an Uzi, and some cash. He ended up riding around in the rental car driven by Patrick Howell, with Morgan in the rear right seat. At some point during the drive, Morgan shot Tillman in the back of the head. After Tillman slumped lifelessly in his seat, Morgan put the gun to Tillman’s head and fired a second shot. Patrick Howell and Morgan pushed the body out of the car and drove off with the cocaine, the Uzi, and the cash. After the murder, several coconspirators attempted to clean up the rental car, but Morgan’s ex-girlfriend and the mother of his child, Tammie Bailey, rode in the rental car and noticed blood and bullet holes in the interi- or.
As law enforcement officials investigated the Tillman murder, Paul Howell and Morgan became concerned that Bailey would report them to the authorities. Morgan offered a friend $1,000 to lure Bailey to a highway rest stop so he could kill her. The friend, looking for a way to beg off, asked about Bailey’s baby, who Morgan had fathered. Morgan told her to bring the baby, too. But the friend refused the money and began to avoid Morgan. Paul Howell wired Bailey some money to drive to Ft. Lauderdale to see him, possibly to rehearse the statement she should give to police and possibly to kill her. But Bailey spent the money on her new apartment instead and, when Paul Howell called to ask why she had not come to Ft. Lauder-dale, she told him that her baby was sick and she needed a microwave to warm the baby’s milk. Paul Howell then constructed a pipe bomb to kill Bailey and placed the pipe bomb in a microwave oven, which he gift-wrapped for delivery to her. Id. at *1188 1217-18. As another man drove the package to Bailey’s house, he was stopped by Florida Highway Patrol Trooper James Fulford for speeding and arrested for operating a vehicle without a license. Id. at 1216. The driver consented to a search of the vehicle and, when Trooper Fulford opened the gift-wrapped package, the microwave exploded and killed him. Id.
Morgan, along with several of his coconspirators, was convicted in 1993 of various racketeering offenses, and the Tillman murder served as one of the underlying racketeering acts. The district court sentenced Morgan to life without parole under the then-mandatory sentencing guidelines. We affirmed Morgan’s convictions on direct appeal. Id. at 1220. In 2004, Morgan filed his first motion to vacate, set aside, or correct his sentence, 28 U.S.C. § 2255, and alleged a violation of his right to confrontation under the decision of the Supreme Court in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The district court dismissed the motion, and we granted a certificate of appealability and affirmed. Morgan v. United States, 195 Fed.Appx. 924 (11th Cir.2006). In 2009, Morgan filed an “Appeal Motion Pursuant [to] Section 3742,” which the district court dismissed as an unauthorized second or successive motion to vacate, correct, or set aside his sentence. In 2011, Morgan filed his third motion to vacate, set aside, or correct his sentence and alleged three new claims: (1) a violation of Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); (2) a wrongful denial of sentencing relief based on the retroactive reduction of the crack cocaine guidelines, 18 U.S.C. § 3582(c)(2); and (3) a violation of the Eighth Amendment based on the decision of the Supreme Court in Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), that the Eighth Amendment prohibits the imposition of a life sentence for a juvenile offender who did not commit a homicide, id. at 2034. The United States moved to dismiss the motion based on Apprendi and Graham as untimely, responded to the claim under section 3582(c)(2) on the merits, and argued that Graham was inapplicable because Morgan was sentenced to life for a homicide offense. The district court denied relief under section 3582(c)(2), and referred the two constitutional claims to a magistrate judge, before whom they remain pending.
Twenty years after his conviction and following years of unsuccessful attempts to vacate his sentence, Morgan moved this Court to grant him the extraordinary opportunity of filing a fourth motion to vacate, set aside, or correct his sentence. Based on the decision of the Supreme Court in Miller v. Alabama, — U.S. -, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), Morgan argued that he was entitled to relief because he was sentenced to life imprisonment without the possibility of parole under the then-mandatory sentencing guidelines. But the standard Morgan must meet to obtain leave to file his successive motion is demanding: we can grant his application only if we certify that his motion contains a claim relying on “a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.” 28 U.S.C. § 2255(h)(2).
We held that Morgan could not file his second or successive motion because Miller has not been made retroactive on collateral review by the Supreme Court. A prisoner may receive permission to file a second or successive motion to vacate, set aside, or correct a sentence when a decision of the Supreme Court creates a new rule of constitutional law that “prohibit[s] a certain category of punishment for a class of defendants.” In re Moss, 703 F.3d 1301, 1303 (11th Cir.2013) (quoting Penry *1189 v. Lynaugh, 492 U.S. 302, 330, 109 S.Ct. 2934, 2953, 106 L.Ed.2d 256 (1989), abrogated on other grounds by Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002)). This precedent reflects the instruction of the Supreme Court that a rule may be made retroactive on collateral review by “[m]ultiple cases ... if the holdings in those cases necessarily dictate retroactivity,” id., and the rule that substantive rules apply retroactively, Schriro v. Summerlin, 542 U.S. 348, 351-52, 124 S.Ct. 2519, 2522, 159 L.Ed.2d 442 (2004). “[R]ules [that] prohibit! ] a certain category of punishment for a class of defendants ... regardless of the procedures followed” are substantive. Penry, 492 U.S. at 330, 109 S.Ct. at 2953.
We held that the rule established in Miller could not be considered a substantive rule. Miller did not “h[o]ld, as a substantive matter, that the Eighth Amendment prohibits the [imposition of life without parole for juvenile offenders] such as [Morgan] regardless of the procedures followed.” See id. Instead, Miller held that “mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment! ]” because “[s]uch a [sentencing] scheme prevents those meting out punishment from considering a juvenile’s lessened culpability and greater capacity for change, and runs afoul of [the] requirement of individualized sentencing for defendants facing the most serious penalties.” Miller, 132 S.Ct. at 2460 (emphasis added) (internal quotation marks and citation omitted). And the Supreme Court made clear that its decision “d[id] not foreclose a sentencer’s ability to make t[he] judgment [that a juvenile offender should be sentenced to life imprisonment without the possibility of parole] in homicide cases.” Id. at 2469. Instead, the rule established in Miller “require[d] [the sentenced to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.” Id. ‘'[RJules that regulate only the manner of determining the defendant’s [sentence] are procedural.” See Summerlin, 542 U.S. at 353, 124 S.Ct. at 2523. Because the rule established in Miller is not substantive and has not otherwise been made retroactive by the Supreme Court, we concluded that Morgan could not bring a second or successive motion to vacate, set aside, or correct his sentence.
II. DISCUSSION
Although the panel decision involved a straightforward application of Supreme Court and Circuit precedent, three of my colleagues appear to misunderstand both the decision and our governing precedents. The Supreme Court has drawn a clear distinction between substantive and procedural rules for the purpose of retroactive application on collateral review: substantive rules generally apply retroactively and procedural rules generally do not. Notwithstanding the hyperbole in the dissents, the procedural nature of the rule established in Miller is not debatable. En banc consideration of this question would be a waste of judicial resources.
A. The Supreme Court Has Drawn a Clear Distinction Between Substantive and Procedural Rules for the Purpose of Retroactive Application on Collateral Review.
“New rules” of constitutional law do not apply retroactively to criminal cases that have become final before the rule was announced, unless the new rule falls within one of two narrow exceptions. See Teague v. Lane, 489 U.S. 288, 308, 109 S.Ct. 1060, 1074, 103 L.Ed.2d 334 (1989) (plurality opinion). The first exception permits the retroactive application of “[n]ew substantive rules.” Summerlin, 542 U.S. at 351, *1190 124 S.Ct. at 2522. The second exception authorizes the retroactive application of “a small set of watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding.” Id., 124 S.Ct. at 2523 (internal quotation marks omitted). But the Supreme Court has instructed us that “[t]his class of rules is extremely narrow,” id., and that “[n]ew rules of procedure ... generally do not apply retroactively,” id.', see also Howard v. United States, 374 F.3d 1068, 1080 (11th Cir.2004) (“The lesson of all these decisions, we believe, is that the second Teague exception is so tight that very few new rules will ever squeeze through it.”).
This distinction drawn by the Supreme Court between substantive and procedural rules makes sense. Substantive rules “apply retroactively because they necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose upon him.” Summerlin, 542 U.S. at 352, 124 S.Ct. at 2522-23 (internal quotation marks omitted). New rules of procedure, on the other hand, “do not produce a class of persons convicted of conduct the law does not make criminal, [or sentenced to a punishment that the law cannot impose upon them,] but merely raise the possibility that someone convicted [or sentenced] with use of the invalidated procedure might have been acquitted [or sentenced] otherwise.” See id. Given this “speculative connection” to innocence or to the receipt of a lesser sentence, id., it makes sense not to require the federal or state governments to expend resources on new trials and new sentencing proceedings every time that the Supreme Court announces a new procedural rule. Only those watershed rules of criminal procedure that implicate the fundamental fairness and accuracy of the proceeding deserve retroactive effect. See id., 124 S.Ct. at 2523. As the Supreme Court has explained, “That a new procedural rule is ‘fundamental’ in some abstract sense is not enough; the rule must be one without which the likelihood of an accurate conviction is seriously diminished.” Id. (internal quotation marks omitted).
And the distinction between substantive and procedural rules reflects the interest of the state and federal courts in the finality of judgments. See Teague, 489 U.S. at 308, 109 S.Ct. at 1074. “Application of constitutional rules not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation of our criminal justice system. Without finality, the criminal law is deprived of much of its deterrent effect.” Id. at 309, 109 S.Ct. at 1074. “No one, not criminal defendants, not the judicial system, not society as a whole is benefited by a judgment providing a man shall tentatively go to jail today, but tomorrow and every day thereafter his continued incarceration shall be subject to fresh litigation on issues already resolved.” Mackey v. United States, 401 U.S. 667, 691, 91 S.Ct. 1171, 1179, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring in judgments in part and dissenting in part). And “[t]he costs imposed upon the State[s] [and the federal government] by retroactive application of new rules of constitutional law on habeas corpus ... generally far outweigh the benefits of this application.” See Solem v. Stumes, 465 U.S. 638, 654, 104 S.Ct. 1338, 1347-48, 79 L.Ed.2d 579 (1984) (Powell, J., concurring in the judgment). For these reasons, the Supreme Court has limited the application of new constitutional rules on collateral review of criminal convictions to those rules that “necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal or faces' a punishment that the law cannot impose upon him.” See Summerlin, 542 U.S. at 352,
*1191 124 S.Ct. at 2522-23 (internal quotation marks omitted). Miller is not that kind of rule, and Morgan may not benefit from it on collateral review.
B. Notioithstanding the Misunderstandings in the Dissents, the Rule Established in Miller Is Procedural.
The dissents reflect an astonishing number of fundamental misunderstandings about the circumstances in which a prisoner may obtain the benefits of a new rule of constitutional law on federal collateral review. I count at least five of these misunderstandings, and the error of each argument is apparent.
First, all three of the dissenters labor under the misconception that, if a rule might have affected the sentence imposed upon a defendant, that rule must be substantive. Judge Barkett’s dissent argues that the rule in Miller must be substantive because, “[bjefore Miller, a juvenile offender convicted of certain crimes would automatically receive a sentence of life without the possibility of parole; after Miller, the vast majority of such offenders will receive a substantively different and lesser sentence.” Dissenting Op. of Barkett, J., at 1196. Judge Wilson and Judge Martin’s dissent argues that, “to write off as merely procedural a new rule that will compel a different substantive result—’that is, a different, and lesser, sentence'—in the majority of cases that will follow would be to stretch the meaning of ‘procedural’ too far.” Dissenting Op. of Wilson, J., & Martin, J., at 1198. But that a different result is likely under a new rule does not make that rule substantive. Although all new constitutional rules are likely to produce different results in at least some circumstances, the Supreme Court has explained that only some of these rules apply retroactively. Substantive rules “apply retroactively because they ‘necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal’ or faces a punishment that the law cannot impose upon him,” Summerlin, 542 U.S. at 352, 124 S.Ct. at 2522-23 (quoting Bousley v. United States, 523 U.S. 614, 620, 118 S.Ct. 1604, 1610, 140 L.Ed.2d 828 (1998) (internal quotation marks omitted)). And a rule is substantive only if it is a “substantive categorical guarantee[ ] accorded by the Constitution, regardless of the procedures followed.” See Penry, 492 U.S. at 329, 109 S.Ct. at 2952 (emphasis added). No other kind of rule “carries] a significant risk that a defendant ... faces a punishment that the law cannot impose upon him.” Summerlin, 542 U.S. at 352, 124 S.Ct. at 2522-23 (emphasis added). And Miller does not implicate a substantive categorical guarantee because a juvenile offender may still be sentenced to life imprisonment without the possibility of parole after Miller.
And the speculation of the dissenters about the likely effect of Miller in any particular case underscores the procedural nature of the rule. Judge Barkett’s dissent speculates that Miller will result in reduced sentences for the “vast majority” of juvenile offenders. Dissenting Op. of Barkett, J., at 1196. Judge Wilson and Judge Martin’s dissent speculates that the rule “will compel a different substantive result ... in the majority of cases that will follow.” Dissenting Op. of Wilson, J., & Martin, J., at 1198 (emphasis added). And Judge Wilson and Judge Martin’s dissent makes much of the speculation of the majority in Miller that the rule established in that decision would make sentences of life imprisonment for juvenile offenders uncommon. See id. But the Supreme Court has explained that, when the effect of a rule in any particular case is speculative, the rule is procedural. See Summerlin, 542 U.S. at 352, 124 S.Ct. at 2523. We can only speculate about the effect of Miller in any particular case because, after that decision, juvenile offenders may still be sen *1192 tenced to life imprisonment without the possibility of parole. Judge Wilson and Judge Martin argue that “[t]here is nothing ‘speculative’ about the fact that [these juvenile offenders], judged by today’s standards, would likely receive a lesser sentence.” Dissenting Op. of Wilson, J., & Martin, J., at 1199 (emphasis added). But that statement is speculative on its face, and a rule whose effect is merely “likely” is procedural, not substantive.
Second, the dissenters argue that Miller may be substantive because it expands the possible sentencing outcomes for juvenile offenders who were previously subject to mandatory life imprisonment without the possibility of parole, but that argument is foreclosed by Supreme Court precedent. Judge Barkett’s dissent asserts that the rule in Miller is substantive because it “expanded the range of possible substantive sentencing outcomes for juvenile offenders.” Dissenting Op. of Barkett, J., at 1196. Judge Wilson and Judge Martin’s dissent asserts less confidently that, “[b]y altering the range, of possible outcomes for a juvenile sentenced to life without parole under a mandatory sentencing scheme, Miller arguably heralds a substantive rule.” Dissenting Op. of Wilson, J., & Martin, J., at 1198. But the Supreme Court has .explained that a new rule is procedural, not substantive, when it does not “alter the range of conduct ... subjected to [a punishment],” but instead “alter[s] the range of permissible methods for determining whether a defendant’s conduct is punishable by [that punishment].” Summerlin, 542 U.S. at 353, 124 S.Ct. at 2523. Miller “altered [only] the range of permissible methods for determining whether a [juvenile offender’s] conduct is punishable by [life without parole].” See id. One cannot reasonably contend otherwise.
Third, Judge Barkett’s dissent displays a fundamental misunderstanding of the term “punishment.” Judge Barkett’s dissent argues that the rule established by the Supreme Court in Miller is substantive and retroactive on collateral review because it “prohibits] a certain category of punishment for a class of defendants because of their status or offense.” Dissenting Op. of Barkett, J., at 1195 (quoting Penry, 492 U.S. at 330, 109 S.Ct. at 2953). But Miller did not prohibit any category of punishment for juveniles. Punishment is defined as “[a] sanction—such as a fine, penalty, confinement, or loss of property, right, or privilege—assessed against a person who has violated the law.” Black’s Law Dictionary 1353 (9th ed. 2009). And Black’s Law Dictionary cross-references “punishment” with “sentence,” which is defined as “[t]he judgment that a court formally pronounces after finding a criminal defendant guilty; the punishment imposed on a criminal wrongdoer <a sentence of 20 years in prison>.” Id. at 1485. Miller did not prohibit the punishment of life imprisonment without the possibility of parole for juvenile offenders, but only the mandatory procedure by which that punishment had been imposed. 132 S.Ct. at 2469. The attempt of Judge Barkett’s dissent to define the word “punishment” to include a “mandatory life sentence” is contrary to the ordinary legal meaning of that word. See Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 73 (2012) (“[W]hen the law is the subject, ordinary legal meaning is to be expected .... ”). A juvenile offender who serves a life sentence without the possibility of parole imposed under a mandatory sentencing scheme receives the same punishment as a juvenile offender who serves a life sentence without the possibility of parole imposed under a discretionary sentencing scheme.
Fourth, Judge Wilson and Judge Martin’s dissent confuses the rules of retroactivity that apply on federal collateral re *1193 view with the rules of retroactivity that apply to state collateral review. Their dissent argues that the issue is close because “[t]here is great" confusion amongst the courts of this country as to whether Miller applies retroactively.” Dissenting Op. of Wilson, J., & Martin, J., at 1199-1201 & 1200 n. 2. But all of the decisions cited by the dissent for this point, save one, were decisions by state courts on state collateral review. See id. State courts are free to apply whatever retroactivity rules they wish to apply in their own state collateral proceedings because the federal doctrine of non-retroactivity limits only the scope of federal collateral relief. Danforth v. Minnesota, 552 U.S. 264, 281, 128 S.Ct. 1029, 1041-42, 169 L.Ed.2d 859 (2008). But federal courts are bound by Supreme Court precedents on the availability of new constitutional rules "to prisoners on federal collateral review. And the only other circuit court to have considered the question agrees that “Miller does not satisfy the test for retroactivity because it does not categorically bar all sentences of life imprisonment for juveniles.” Craig v. Cain, No. 12-30035, 2013 WL 69128, at *2 (5th Cir.2013). Dictum in the footnote of a single opinion of a federal district court, see Hill v. Snyder, No. 10-14568, 2013 WL 364198, at *2 n. 2 (E.D.Mich. Jan. 30, 2013), hardly supports the proposition that “great confusion” exists among the federal courts on the retroactive application of Miller.
Finally, my dissenting colleagues devote considerable attention to the position taken by the United States Department of Justice in a proceeding before the Eighth Circuit that the rule established in Miller is substantive, but that position has no bearing on our consideration of the question. The bar on second or successive motions is jurisdictional, see Panetti v. Quarterman, 551 U.S. 930, 942, 127 S.Ct. 2842, 2852, 168 L.Ed.2d 662 (2007), so we must determine whether an application to file a second or successive motion is based on a claim involving “a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable,” 28 U.S.C. § 2255(h)(2). The United States could not concede this legal issue, even if it had taken that position before this Court. See Gilbert v. United States, 640 F.3d 1293, 1306 n. 14 (11th Cir.2011) (citing Roberts v. Galen of Va., Inc., 525 U.S. 249, 253, 119 S.Ct. 685, 687, 142 L.Ed.2d 648 (1999)). And the attempt of the United States to concede this jurisdictional issue before our Court would be of particular concern because a holding that Miller is substantive would bind future panels in proceedings involving state prisoners. Compare 28 U.S.C. § 2255(h)(1) with id. § 2244(b)(2)(A). If the Executive wants to give juvenile offenders relief after Miller, he can commute the sentences of juvenile offenders who were sentenced to life imprisonment without parole under mandatory sentencing schemes in the federal system. See U.S. Const. Art. II, § 2. But we cannot accept the attempt by the United States to concede a jurisdictional issue that must be resolved to the contrary under binding precedent of the Supreme Court.
C. En Banc Consideration of a Decision that Is Undoubtedly Correct Would Be a Waste of Judicial Resources.
Two of my colleagues, though not prepared to declare that the rule established by Miller is substantive, argue that the matter should be considered en banc because it presents “a question of exceptional importance,” but en banc consideration of this issue, no matter how important, would be a waste of judicial resources. A precedent of a panel of this Circuit is as binding as a precedent of the en banc Court. Smith v. GTE Corp., 236 F.3d 1292, 1300 n. 8 (11th Cir.2001) (“Under the well-established prior panel precedent rule of this *1194 Circuit, the holding of the first panel to address an issue is the law of this Circuit, thereby binding all subsequent panels unless and until the first panel’s holding is overruled by the Court sitting en banc or by the Supreme Court.”); see also United States v. Steele, 147 F.3d 1316, 1318 (11th Cir.1998) (en banc) (“[A] panel cannot overrule a prior one’s holding even though convinced it is wrong.”). We have the discretion to consider en banc an appeal or other proceeding when that consideration “is necessary to secure or maintain uniformity of the court’s decisions” or when “the proceeding involves a question of exceptional importance.” Fed. R.App. 35. In my view, we should not exercise that discretion when the analysis and decision of a panel is undoubtedly correct. The deliberation by the en banc Court on a question that has been correctly considered and resolved by a panel would consume precious judicial resources and result in a decision that is no more binding or correct than the panel opinion.
This Court often decides issues of exceptional importance without granting en banc review. For example, when 26 states challenged the constitutionality of the Affordable Care Act and moved this Court to grant en banc review, we denied their request even though the challenged Act involved an unprecedented exercise of federal power to compel citizens to purchase health insurance and to require state governments to expand their Medicaid programs. See Fla. ex rel. Att’y Gen. v. U.S. Dep’t of Health & Human Servs., 648 F.3d 1235, 1240-41 (11th Cir.2011), overruled in part by Nat’l Fed’n of Indep. Bus. v. Sebelius, — U.S. -, 132 S.Ct. 2566, 183 L.Ed.2d 450 (2012). And when we granted a writ of mandamus to prevent a district court from compelling a cabinet-level official to attend a hearing when another presidential appointee was available to represent the agency, we did not rehear that appeal en banc. See In re United States, 624 F.3d 1368, 1369-70 (11th Cir.2010).
In our democratic republic, where the right to vote is fundamental, we routinely decide appeals about elections and voting without granting en banc review. For example, when we preliminarily enjoined Florida from increasing its subsidy of the campaign of a gubernatorial candidate who had accepted public funding because the increased subsidy unfairly penalized the free speech of an opponent who had declined public funding, we did not vote to rehear that appeal en banc. See Scott v. Roberts, 612 F.3d 1279, 1281-82 (11th Cir.2010). When we upheld the Georgia law that requires voters to present photo identification to poll workers, we did not rehear that appeal en banc. See Common Cause/Ga. v. Billups, 554 F.3d 1340, 1345 (11th Cir.2009). And when we affirmed first the preliminary and later the permanent injunction against counting unverified absentee ballots in the 1994 election of the Chief Justice of Alabama, we did not rehear en banc either of those two appeals. See Roe v. Alabama, 68 F.3d 404, 409 (11th Cir.1995); Roe v. Alabama, 49 F.3d 734 (11th Cir.1995).
We also have declined to grant en banc review in matters of church and state. For example, when we affirmed the decision that permitted the Cobb County Commission to continue its practice of legislative prayer to begin its meetings, we did not rehear that appeal en banc. See Pelphrey v. Cobb Cnty., Ga., 547 F.3d 1263, 1266-67 (11th Cir.2008). And when we affirmed an injunction that required the Chief Justice of Alabama to remove a monument of the Ten Commandments from the Alabama State Judicial Building, we did not rehear that appeal en banc. See Glassroth v. Moore, 335 F.3d 1282, 1284 (11th Cir.2003).
*1195 The same is true in sensitive matters of foreign relations, immigration, and terrorism. When the Executive deported Elian Gonzalez to Cuba, after his mother had died at sea escaping that Communist regime, we refused to rehear the denial of the petition to review that order of deportation. See Gonzalez ex rel. Gonzalez v. Reno, 215 F.3d 1243, 1245-46 (11th Cir.2000). We also denied en banc review to the appeal of a former Panamanian dictator who unsuccessfully challenged his extradition to France. See Noriega v. Pastrana, 564 F.3d 1290, 1292 (11th Cir.2009). And we did not rehear en banc the decisions that invalidated several provisions of immigration laws in Alabama and Georgia. See United States v. Alabama, 691 F.3d 1269, 1301 (11th Cir.2012); Ga. Latino Alliance for Human Rights v. Governor of Ga., 691 F.3d 1250, 1269 (11th Cir.2012); Hispanic Interest Coal. of Ala. v. Governor of Ala., 691 F.3d 1236, 1241 (11th Cir.2012). Nor did we rehear en banc the decision that, for the first time among the circuit courts, interpreted the power of Congress to define and punish “Offences against the Law of Nations” and declared unconstitutional the Maritime Drug Law Enforcement Act as applied to defendants who had engaged in drug trafficking in the territorial waters of Panama. See United States v. Bellaizac-Hurtado, 700 F.3d 1245, 1247 (11th Cir.2012). And we denied rehearing en banc of the appeal in which we affirmed the conviction of Jose Padilla for various offenses related to terrorism and vacated his sentence as unreasonably lenient. See United States v. Jayyousi, 452 Fed.Appx. 943 (11th Cir.2011).
Even in matters of life and death, we rarely grant en banc review. For example, when the parents of Terri Schiavo petitioned this Court to rehear their appeals of the decisions not to enjoin her starvation and death, we denied their requests, notwithstanding their obvious importance. Schiavo ex rel. Schindler v. Schiavo, 404 F.3d 1270 (11th Cir.2005); Schiavo ex. rel. Schindler v. Schiavo, 403 F.3d 1261 (11th Cir.2005). And we have reviewed dozens of death sentences each year without rehearing those appeals en banc, save for the rare circumstance where it has been necessary to maintain the uniformity of our precedents. See, e.g., Evans v. Sec’y, Dep’t of Corr., 703 F.3d 1316 (11th Cir.2013) (en banc).
The dissents that follow offer no good reason to rehear this matter en banc. The panel decision is plainly right. We have declined to review myriad decisions that were of equal or even greater importance, and granting en banc review of this matter would waste precious judicial resources.