87 F.3d 1214
 UNITED STATES of America, Plaintiff-Appellee,
v.
Norris MOTHERSILL, a/k/a Warren C. Whylley; Errol Morrison,
a/k/a Errol Brown, a/k/a Errol Fargasco, a/k/a Jubee;
Egnatius Johnson, a/k/a Jano, a/k/a Johno, a/k/a Maurice;
Patrick Howell, a/k/a Tony, a/k/a Smooth; Paul Augustus
Howell; Michael Morgan, a/k/a Michael Clarke; Patricia C.
Clarke, Defendants-Appellants.
 No. 93-2609.
 United States Court of Appeals,
Eleventh Circuit.
 July 11, 1996.
 
 1
 Eric J. Haugdahl, Tallahassee, FL, for Mothersill.
 
 
 2
 Barbara Sanders, Apalachicola, FL, for Johnson.
 
 
 3
 Charles A. McMurry, McMurry & Asbell, Tallahassee, FL, for Morrison.
 
 
 4
 Angela M. Cancio, Schutte & Cancio, Tallahassee, FL, for Biggs.
 
 
 5
 Lynn Alan Thompson, Tallahassee, FL, for Morgan.
 
 
 6
 Robert A. Rand, Rand & Walker, Tallahassee, FL, for Patrick Howell.
 
 
 7
 Josephine Deyo, Asst. Federal Public Defender, Tallahassee, FL, for P. Clarke.
 
 
 8
 Loren Levy, Tallahassee, FL, for Paul Howell.
 
 
 9
 Alan Burrow, Asst. U.S. Atty., Tallahassee, FL, for appellee.
 
 
 10
 Appeal from the United States District Court for the Northern District of Florida.
 
 
 11
 Before COX and BARKETT, Circuit Judges, and MOORE*, Senior District Judge.
 
 JOHN H. MOORE, II, Senior District Judge:
 
 12
 On February 1, 1992, on a highway located in Jefferson County, Florida, Florida Highway Patrol Trooper James Fulford observed a car exceeding the speed limit and made a routine traffic stop. After making the usual inquiries, he discovered the car was a rental, and the driver was without a license; he arrested the driver of the vehicle for operating a vehicle without a license. After the driver consented, and while waiting for the car to be impounded, Trooper Fulford opened a gift-wrapped package found in the truck of the vehicle, purportedly containing a microwave oven. Unfortunately, there was a homemade pipe bomb inside the microwave oven, which was triggered to explode when the microwave was opened. Trooper Fulford died from the extensive injuries he received from the blast.
 
 
 13
 After law enforcement conducted a thorough investigation, the government indicted several individuals, ultimately filing a third superseding indictment on October 16, 1992, which included charges ranging from drug and RICO conspiracies to felony murder and the murder of a law enforcement officer. On March 9, 1993, after an eight-week criminal jury trial, Appellants were convicted of several counts.
 
 
 14
 Appellants Patrick and Paul Howell, Michael Morgan, Patricia Clarke, Norris Mothersill, Egnatius Johnson, and Errol Morrison were all found guilty of either Counts I or III, which alleged a conspiracy to commit racketeering pursuant to 18 U.S.C. § 1962(d) and conspiracy to traffic in controlled substances pursuant to 21 U.S.C. § 846, respectively.[1] For purposes of the discussion below, it is noteworthy that Appellants Patrick and Paul Howell, Morgan, Clarke, Mothersill, and Johnson were all found guilty of Count XXVIII of the Third Superseding Indictment.[2] Count XXVIII dealt with Trooper Fulford's death, and Appellants Morgan, Clarke, Johnson and Mothersill were found guilty under the co-conspirator liability theory outlined in Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). Defendant Paul Howell was convicted pursuant to the Pinkerton liability theory for his role in the creation of the bomb that led to Trooper Fulford's death. Patrick Howell was convicted under Pinkerton liability and for aiding and abetting the crime.[3]
 
 
 15
 After the district court sentenced Appellants to life or "life-plus" terms of imprisonment, Appellants appealed their convictions to this Court. We have jurisdiction to consider an appeal from a criminal judgment pursuant to 28 U.S.C. § 1294. Appellants raise several issues, only one of which merits discussion, namely, the imposition of Pinkerton co-conspirator liability. The remaining issues are meritless and we affirm them without discussion. We affirm.
 
 I. STANDARD OF REVIEW
 
 16
 The scope of our review is limited since the application of the Pinkerton doctrine to the facts of a case lies within the jury's domain. United States v. Alvarez, 755 F.2d 830, 848 (11th Cir.1985). Nye & Nissen v. United States, 336 U.S. 613, 618, 69 S.Ct. 766, 769, 93 L.Ed. 919 (1949). In determining whether the trial court was correct in submitting the Pinkerton issue to the jury, we must ascertain "whether the evidence was sufficient for a reasonable jury to have concluded, beyond a reasonable doubt, that the murder was a reasonably foreseeable consequence of the drug conspiracy alleged in the indictment." Alvarez, 755 F.2d at 848. In making our determination, we view the evidence in the light most favorable to the government and accept all the jury's reasonable inferences and credibility choices which support the verdict. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704 (1942).
 
 II. DISCUSSION
 
 17
 a. Background Facts
 
 
 18
 Patrick Howell, Michael Morgan and Egnatius Johnson, among others, were the principal leaders of an elaborate drug operation, dating back to 1988, that supplied, distributed and sold crack cocaine throughout Florida, Alabama, Mississippi, Georgia, and North and South Carolina. Most of the leaders were Jamaican citizens residing in the Ft. Lauderdale, Florida area. Patrick's brother, Paul Howell, Johnson's former girlfriend and Morgan's sister, Patricia Clarke, Norris Mothersill and Errol Morrison were also major players in the sophisticated and expansive operation. For purposes of our discussion, the precise scope and history of the conspiracy need not be recited; however, certain events and individuals, pertinent to the issue examined below, warrant mentioning.
 
 
 19
 Egnatius Johnson distributed and supplied a great deal of crack cocaine from a source located in the Bahamas, employing individuals to import the cocaine on cruise ships sailing to and from Florida. Appellant Clarke, along with her brother, had been trafficking drugs from South Florida to Marianna, Florida, Georgia and Alabama; they joined Johnson in his endeavors sometime in early 1992. Patrick Howell, introduced to the area by Michael Morgan, sold cocaine in the Marianna Garden Apartments in Marianna, Florida throughout the 1980s, and later expanded his business to Georgia and South Carolina. Mothersill, assisted by Morrison, started dealing drugs in Marianna during the late 1980s.
 
 
 20
 In August of 1991, Patrick Howell and Michael Morgan were plotting to rob a Ft. Lauderdale drug dealer named Alfonso Tillman. With Clarke and Johnson present, Howell and Morgan obtained a car rented by Paul Howell, and Morgan secured a weapon. Morgan, while Patrick Howell drove, shot and killed Tillman. After the shooting, the inside of the car needed extensive cleaning, and Clarke and Patrick and Paul Howell commenced the clean-up efforts. Tammie Bailey and Yolanda McCalister were the girlfriends of Michael Morgan and Patrick Howell respectively. Patrick Howell had informed McCalister of the murder, and warned her if she told anybody, he would kill her and her family. McCalister and Bailey ultimately rode in the rental car, noticing blood and bullet holes in the interior, and blood on Patrick Howell's shorts.
 
 
 21
 In October of 1991, after returning from a trip to Jamaica, Patrick Howell was detained by immigration officials and ultimately arrested. While Patrick was incarcerated, Paul took over the supervisory role in their drug operation. During this time, law enforcement officials were progressing in the investigation of the Tillman murder. In the wake of the Tillman murder, appellant Paul Howell, concerned about the possibility of Ms. Bailey "straying" and turning to the authorities, constructed a pipe bomb with the intention of killing her in an apparent attempt to ensure she would not talk. To that end, he ordered the delivery of a gift-wrapped package containing a microwave oven to Ms. Bailey; inside the oven was the homemade pipe bomb that took Trooper Fulford's life.
 
 
 22
 b. Pinkerton/Alvarez co-conspirator liability
 
 
 23
 Basic to criminal law principles is the concept that the "commission of a substantive offense and a conspiracy to commit it are separate and distinct offenses." United States v. Gornto, 792 F.2d 1028, 1035 (11th Cir.1986); Pinkerton, 328 U.S. at 643, 66 S.Ct. at 1182. Each party to a continuing conspiracy may be vicariously liable for substantive criminal offenses committed by a co-conspirator during the course and in the furtherance of the conspiracy, notwithstanding the party's non-participation in the offenses or lack of knowledge thereof. See Pinkerton, 328 U.S. at 646-47, 66 S.Ct. at 1184. Liability will not lie, however, if the substantive crime "did not fall within the scope of the unlawful project, or was merely a part of the ramifications of the plan which could not be reasonably foreseen as a necessary or natural consequence of the unlawful agreement." Pinkerton, 328 U.S. at 647-48, 66 S.Ct. at 1184; see also Alvarez, 755 F.2d at 848; United States v. Gualdado, 794 F.2d 1533, 1535 (11th Cir.1986); Meester, 762 F.2d at 877. Hence, a court need not assess the individual culpability of a particular conspirator provided the "substantive crime was a reasonably foreseeable consequence of the conspiracy." Alvarez, 755 F.2d at 849-50.
 
 
 24
 Generally, Pinkerton co-conspirator liability applies in two situations. First, where the substantive crime is also a goal of the conspiracy, e.g., where there is a narcotics conspiracy and a corresponding substantive crime of possession or distribution of cocaine. The second scenario is where the substantive offense differs from the precise nature of the ongoing conspiracy, but facilitates the implementation of its goals. For example, a particular co-conspirator, found guilty of conspiring to distribute drugs, may also be held liable for the substantive crime of possession of a firearm.
 
 
 25
 In Alvarez, this circuit expanded the breadth of Pinkerton liability to include reasonably foreseeable but originally unintended substantive crimes, in other words, embracing substantive crimes occurring "as a result of an unintended turn of events." Alvarez, 755 F.2d at 850. Despite the fact that murder was not within the originally intended scope of the conspiracy in that case, the Alvarez Court found individual culpability of the defendants sufficient to support their murder convictions pursuant to the Pinkerton co-conspirator doctrine. Alvarez, 755 F.2d at 851.
 
 
 26
 The extension of co-conspirator liability to "reasonably foreseeable but originally unintended substantive crimes" must be limited by due process as Alvarez realized. Thus, Alvarez's holding is limited to conspirators "who played more than a 'minor' role in the conspiracy, or who had actual knowledge of at least some of the circumstances and events culminating in the reasonably but unintended substantive crime." Alvarez, 755 F.2d at 851 n. 27.
 
 
 27
 It seems clear the primary goal of Appellants' conspiracy in the instant case was not specifically to cause the death of a state trooper on a highway by means of a pipe bomb; their principal objective was to engage in the sale and distribution of illegal drugs. As applied to this case, therefore, Alvarez's holding means that liability properly attaches to Appellants if the substantive crime of causing the death of Trooper Fulford was a reasonably foreseeable but originally unintended outcome, provided Appellants were more than "minor" players in the conspiracy or had some actual knowledge of some of the circumstances and events leading to the death of Trooper Fulford.
 
 
 28
 The Court in Alvarez focused on two factors in finding that there was sufficient evidence to support the jury's conclusion that murder was a reasonably foreseeable consequence of the conspiracy. The first was the substantial amount of drugs and money involved in the drug conspiracy; as that court states, it was not a "nickel-and-dime" operation. Alvarez, 755 F.2d at 848. The second involved the jury's ability to infer--given the amount of drugs and money involved in the operation--that the conspirators must have been aware of the likelihood that another member of their coterie would be using or carrying weapons and that, if necessary, deadly force would be used to protect the conspirators' interests. Id. at 849. We find both factors are present in this case.
 
 
 29
 Appellants argue that the bombing was an attenuated, unintended act, and that it does not compare, for example, to the use of firearms for stealing or protecting drugs and monies derived from a conspiracy to distribute drugs. Appellants also maintain that Trooper Fulford's death was the result of an irrational act by Paul Howell which could not have been reasonably foreseen as a natural and probable consequence of the alleged conspiracy. The government, conversely, argues that deadly force and violence were more than peripheral possibilities; rather, they were routine practices and central to the goals and implementation of the conspiracy. A review of the record supports the government's position.
 
 
 30
 When viewed in light of the Alvarez theory of co-conspirator liability, it is clear that the trial court did not err by submitting the Pinkerton issue to the jury. There was sufficient evidence for a reasonable jury to have concluded beyond a reasonable doubt that the murder was a reasonably foreseeable consequence of the drug conspiracy. We further find that the court's jury instructions are sound and without error.[4] We therefore find that Pinkerton liability was properly imposed on Appellants.
 
 
 31
 An exhaustive examination of the record reveals abundant evidence supporting the jury's conclusion that the killing of individuals was a reasonably foreseeable consequence of the ongoing conspiracy, especially given the frequency with which weapons and violence, actual or threatened, were used in order to further the interests of the conspiracy. One need not look further than the Tillman murder to support its conclusion. Moreover, the record is replete with references to the conspirators being continuously armed and using such weapons either to protect or advance their interest, most notably by armed robberies.
 
 
 32
 Cognizant of the due process considerations promoted by Alvarez, and bound by its narrow holding, we find the individual culpability of Appellants sufficient to support their convictions pursuant to Pinkerton. Further, we conclude the relationship between Appellants and Trooper Fulford's death was not so attenuated as to transgress the due process limitations on Pinkerton co-conspirator liability and preclude its application.
 
 
 33
 Patrick Howell, Michael Morgan and Egnatius Johnson were the principal leaders of the drug operation, and their role was more than "minor" in the conspiracy. Appellants Paul Howell, Clarke, and Mothersill also played important roles in the implementation of the conspiracy's unlawful goals and deserve the label "more than minor participants." Therefore, we hold that the imposition of Pinkerton liability on Appellants Morgan, Clarke, Johnson, Mothersill and Patrick Howell for the death of Trooper Fulford was proper, and hence, reject Appellants' attempts to reverse their convictions on this ground.
 
 
 34
 AFFIRMED.
 
 
 
 *
 Honorable John H. Moore, II, Senior U.S. District Judge for the Middle District of Florida, sitting by designation
 
 
 [1]
 As to the remaining charges, Appellant Patrick Howell was found guilty of possession with intent to distribute cocaine (Count IX); illegal drug possession (Counts X and XI); malicious destruction of property used in interstate commerce resulting in the death of another (Count XVIII); and use of a firearm during and in relation to a drug trafficking offense (Count XXIX). Appellant Morgan was found guilty of Counts IX, X, XI and XVIII; Appellant Paul Howell was found guilty of money laundering (Counts XXVI and XXVII) and Counts XVIII and XXIX. Appellant Clarke was found guilty of Count IV (conspiracy to import cocaine) and Count XVIII. Appellant Johnson was found guilty of conspiracy to import cocaine (Count IV) and Count XVIII. Finally, Appellant Mothersill was found guilty of money laundering (Counts VIII and XVI), Count XVIII, witness tampering (Count XXX) and use of a firearm during and in relation to a drug trafficking offense (Count XXXI)
 
 
 [2]
 Count XXVIII, in pertinent part, alleged Appellants:
 did maliciously damage and destroy by means of fire and explosive materials property which was used in interstate or foreign commerce and in activities affecting interstate or foreign commerce, that is: a Sharpe microwave ... and a 1991 Mitsubishi Galant ... and as a direct and proximate result did cause the death of Florida Highway Patrol Trooper James Fulford, a public safety officer in the performance of his duties, in violation of Title 18, United States Code, Sections 844(I) and 2.
 
 
 [3]
 "A defendant charged with conspiracy and the substantive offense 'normally will be responsible for the substantive crime under the Pinkerton theory and also may be responsible for the substantive crime under an aiding and abetting theory.' " United States v. Meester, 762 F.2d 867, 878 (11th Cir.1985) (quoting United States v. Monaco, 702 F.2d 860, 881 (11th Cir.1983))
 
 
 [4]
 The Court's instructions, addressing co-conspirator liability, were, in relevant part:
 Under the law, a conspiracy is a criminal partnership, each member of which may act for every other member. Thus, all members of a conspiracy are responsible for the acts committed by other members, as long as those acts are committed to help advance the conspiracy and are reasonably foreseeable consequences of the conspiracy. This means that all conspirators may be convicted of a crime committed by only one of them, even though they did not personally participate in that crime themselves.
 So, in this case, if you find that a defendant was a member of a conspiracy as charged in the indictment, you may find that defendant guilty of one or more of the substantive offenses charged in Counts IX, X, XI, XII, XXVIII, or XXIX based on the acts of one or more of his coconspirators, provided you are convinced that the government has proved each and every one of the following elements beyond a reasonable doubt:
 First: That the defendant was a member of a conspiracy as alleged in Counts I, III, or IV of the indictment;
 Second: That after he or she joined that conspiracy, and while he was still a member of it, one or more of the other members of the conspiracy committed one or more of the substantive offenses charged in Counts IX, X, XI, XII, XXVIII, or XXIV;
 Third: That the substantive offenses charged in Counts IX, X, XI, XII, XXVIII, and XXIV were committed in furtherance of that conspiracy; and
 Fourth: That the substantive offenses charged in Counts IX, X, XI, XII, XXVIII, and XXIV were reasonably foreseeable consequences of that conspiracy.
 The government need not prove that a defendant specifically agreed or knew that a particular substantive offense would be committed, but the government must prove that the offense was a reasonably foreseeable consequence of the conspiracy. No defendant is responsible for the acts of others that are not reasonably foreseeable consequences of the conspiracy.