[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-10766

_____

D.C. Docket No. 4:04-cv-00299-MCR-MD


PAUL A. HOWELL,

Petitioner - Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(September 13, 2013)

Before BARKETT, PRYOR and JORDAN, Circuit Judges.

PRYOR, Circuit Judge:

The issue in this appeal is whether the district court abused its discretion

when it ruled that the decision in Holland v. Florida, __ U.S. __, 130 S. Ct. 2549

(2010), which altered our previous interpretation of the statute of limitations of one

year for a petition for a writ of habeas corpus, 28 U.S.C. § 2244(d)(1), was not an extraordinary circumstance that warranted vacating a final judgment, Fed. R. Civ. P. 60(b), that dismissed a habeas petition as untimely.  A Florida court sentenced Paul Howell to death for the murder of Trooper James Fulford of the Florida Highway Patrol who intercepted and opened a bomb that Howell sent to a woman he feared would report a murder committed as part of drug trafficking conspiracy.  More than a year after Howell's conviction and death sentence became final, his counsel filed a motion for state collateral review.  Several years later, Howell filed a federal petition for a writ of habeas corpus.  The district court dismissed Howell's petition as untimely, and we affirmed.  Howell v. Crosby, 415 F.3d 1250 (11th Cir. 2005).  On the eve of his execution, Howell filed a motion for relief from judgment under Rule 60(b) and argued that the decision in Holland established that his federal petition had been timely because the statute of limitations should have been equitably tolled, 28 U.S.C. § 2244(d)(2), based on the failure of his counsel to file a motion for state collateral review within a year after his conviction and sentence became final.  The district court denied Howell's motion because it concluded that the change in the interpretation of the statute of limitations was not an extraordinary circumstance that would entitle Howell to relief from a final judgment.  We affirm.

2

## I.  BACKGROUND

Paul Howell was a leader of an extensive and sophisticated operation to sell crack cocaine across Florida, Alabama, Mississippi, Georgia, North Carolina, and South Carolina.  United States v. Mothersill, 87 F.3d 1214, 1217 (11th Cir. 1996).  In August 1991, Howell's brother, Patrick, planned, with Michael Morgan, to rob a drug dealer named Alfonso Tillman.  Id.  Howell rented a car for Patrick and Morgan to use for the murder.  Id.  While Patrick drove the car and Tillman sat in the front passenger seat, Morgan shot and killed Tillman.  Id.  Howell and Patrick attempted to clean up the car after the shooting, but Morgan's girlfriend, Tammie Bailey, saw the blood and bullet holes in the car.  Id.

By October 1991, Howell had taken over the supervisory role in the drug operation from Patrick, who was incarcerated, and Howell became concerned that Bailey would report the murder of Tillman to the authorities.  Id.  After Bailey complained to Howell that she needed a microwave to warm milk for her sick baby, Howell paid a friend to buy a microwave from Sears.  Howell then constructed a pipe bomb and placed it in the microwave, which he gift-wrapped for delivery to Bailey.  Howell paid Lester Watson to deliver the gift-wrapped package to Bailey in a rental car.

On February 1, 1992, Lester Watson and Curtis Williams were driving the rental car on Interstate Highway 10 when they were stopped by a Florida Trooper,

James Fulford, for speeding. After Fulford determined that Watson did not have a driver's license, two local deputies arrived to arrest him. Watson gave the officials permission to search the car, and the deputies took Watson and Williams to the Jefferson County jail. Because the rental car was registered to Howell, the dispatcher called him to inquire whether the car was stolen. Howell told the dispatcher that he had given Watson permission to drive the car, and the dispatcher informed Howell that the car would be impounded.

Howell did not warn anyone about the pipe bomb in the car. When Fulford removed the gift-wrapped microwave from the trunk and attempted to open it, the bomb exploded. The bomb severed Fulford's left leg and nearly severed his right leg. Fulford later died from his injuries.

Howell was prosecuted in a Florida court for first-degree murder and making, possessing, placing, or discharging a destructive device or bomb. Frank Sheffield represented Howell in his trial. During his representation of Howell, Sheffield reported to the trial court that his wife and secretary had received a telephone call at his office and that the caller had told her to deliver the message "that if Paul Howell goes down, Mr. Sheffield is going down also." The trial court denied Sheffield's motion to withdraw. The prosecution moved to disqualify Sheffield, but the trial court denied the motion.

4

A Florida jury found Howell guilty of first-degree murder and of making, possessing, placing, or discharging a destructive device or bomb. Howell v. State, 707 So. 2d 674, 676–77 (Fla. 1998). And the jury returned a special verdict that found that the charge of first-degree murder was established under both the theory of premeditation and the theory of felony murder. Id. at 677. The jury recommended the death penalty by a vote of ten to two. Id.

The trial court imposed the death penalty. Id. The trial court found the following five aggravating factors: (1) Howell knowingly created a great risk of death to many persons; (2) Howell committed the murder while engaged in the unlawful making, possessing, placing, or discharging of a destructive device or bomb; (3) Howell committed the murder to avoid or prevent a lawful arrest; (4) Howell murdered a law enforcement officer engaged in the performance of his official duties; and (5) Howell committed the murder in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. Id. The trial court found the following five statutory and nonstatutory mitigating factors: (1) Howell had no significant history of criminal activity; (2) the murder was committed while Howell was under the influence of extreme mental or emotional disturbance; (3) Howell had served in the military and received an honorable discharge; (4) Howell behaved well as a pretrial detainee; and (5) Howell was a good family man. Id. The trial court determined that the aggravating factors far

outweighed the mitigating factors, but the trial court declined to impose a separate sentence for the construction of the bomb because the two convictions were based on the same underlying conduct.  Id.

On direct appeal, the Supreme Court of Florida affirmed Howell's conviction and sentence.  See id. at 683.  The Supreme Court of the United States then denied Howell's petition for a writ of certiorari on June 26, 1998.  Howell v. Florida, 524 U.S. 958 (1998).  Howell then had one year within which to file a federal petition for a writ of habeas corpus, but "a properly filed application for State post-conviction or other collateral review" would have tolled the federal limitations period.  28 U.S.C. § 2244(d)(1)(A), (d)(2).

A Florida court then appointed Danielle Jorden as Howell's postconviction counsel, and she filed a motion for an extension of time to file for state collateral review.  The state court granted an extension of time that allowed Jorden to file a motion for collateral review by August 30, 1999.  Jorden erroneously believed that the motion for an extension of time would also toll the federal limitations period. Howell, 415 F.3d at 1251.

Jorden filed Howell's motion for state collateral review on August 30, 1999. The trial court denied Howell's motion, and the Supreme Court of Florida affirmed.  Howell v. State, 877 So. 2d 697, 705 (Fla. 2004).

6

On July 26, 2004, Howell filed a federal petition for a writ of habeas corpus. In his petition, Howell alleged that he had been denied the effective assistance of counsel because the trial court refused to allow Sheffield to withdraw from his representation. The Secretary then filed a motion to dismiss Howell's petition as untimely. Howell conceded that his petition should have been filed before June 27, 1999, but he argued that the statute of limitations should be tolled based on Jorden's mistake. The district court dismissed the petition as untimely because it concluded that "[p]etitioner's collateral counsel's filing of his [postconviction] motion without leaving sufficient time to file a federal petition is not an extraordinary circumstance which warrants application of the equitable tolling doctrine." We affirmed the dismissal of Howell's petition as untimely because our precedents held that "attorney negligence is not a basis for equitable tolling." Howell, 415 F.3d at 1252.

On January 18, 2013, the Governor of Florida, Rick Scott, signed a warrant for Howell's execution to occur on Tuesday, February 26, 2013, at 6:00 p.m., but on February 20, 2013, Howell filed an emergency motion for relief from judgment in the district court. See Fed. R. Civ. P. 60(b). The district court denied Howell's motion under Rule 60(b) as untimely, and the district court ruled that, even if the motion were timely, Howell was not entitled to relief under Rule 60(b)(6). The district court rejected the argument that the intervening change in the law effected

7

by <u>Holland</u>, which held that attorney behavior far more serious than negligence might entitle a prisoner to relief from a judgment, was an extraordinary circumstance that would allow the court to reopen a judgment.

On February 25, 2013, the district court issued a certificate of appealability. That certificate was limited to the question whether the decision of the Supreme Court in <u>Holland</u> is an extraordinary circumstance under Rule 60(b)(6) sufficient to justify the reopening of the final judgment of dismissal.  Based on Eleventh Circuit Rule 22-4(a)(7), we entered a temporary stay of execution pending consideration of the merits of this appeal.

## II.  STANDARD OF REVIEW

We review the denial of a motion for relief from judgment under Rule 60(b) for an abuse of discretion.  <u>Cano v. Baker</u>, 435 F.3d 1337, 1341 (11th Cir. 2006).

## III.  DISCUSSION

A prisoner whose petition for a writ of habeas corpus has been denied may file a motion, under Rule 60(b), to challenge "some defect in the integrity of the federal habeas proceedings," but not "to add a new ground for relief."  <u>Gonzalez v. Crosby</u>, 545 U.S. 524, 532, 125 S. Ct. 2641, 2648 (2005).  Under Rule 60(b), the prisoner must prove "'extraordinary circumstances' justifying the reopening of a final judgment."  <u>Id.</u> at 535, 125 S. Ct. at 2649 (quoting <u>Ackerman v. United States</u>, 340 U.S. 193, 199, 71 S. Ct. 209, 212 (1950)).  Howell argues that the

8

change in law effected by the decision of the Supreme Court in Holland is an extraordinary circumstance, but the district court did not abuse its discretion when it denied his motion.

The Supreme Court has explained that extraordinary circumstances that warrant the reopening of a judgment "will rarely occur in the habeas context," Gonzalez, 545 U.S. at 535, 125 S. Ct. at 2649, and the Supreme Court has held that a change in the interpretation of the statute of limitations for a federal habeas petition is not an exceptional circumstance, id. at 536–37, 125 S. Ct. at 2650–51. In Gonzalez, the Court held that the change in law effected by the decision in Artuz v. Bennett, 531 U.S. 4, 121 S. Ct. 361 (2000), which held that a state petition could be properly filed so as to toll the federal statute of limitations even when all of the claims had been procedurally defaulted, was not an extraordinary circumstance. See Gonzalez, 545 U.S. at 536, 125 S. Ct. at 2650. The Court "d[id] not agree" that this "change in the interpretation of the AEDPA statute of limitations" created an extraordinary circumstance. Gonzalez, 545 U.S. at 536, 125 S. Ct. at 2650. The Court instead explained that "[i]t is hardly extraordinary that [after the dismissal of the prisoner's petition based on the statute of limitations], this Court arrived at a different interpretation." Id. And the Court explained that, "[i]f Artuz justified reopening long-ago dismissals based on a lower court's unduly parsimonious interpretation of [the statute of limitations], then Pace

v. DiGuglielmo, 544 U.S. 408, 125 S. Ct. 1807 (2005), would justify reopening long-ago grants of habeas relief based on a lower court's unduly generous interpretation of the same tolling provision." Id. at 536–37, 125 S. Ct. at 2650–51.

The district court did not abuse its discretion when it read Gonzalez to mean that the change of law in Holland was not an extraordinary circumstance. Like the decision in Artuz, the decision in Holland altered the interpretation of the statute of limitations for a petition for a writ of habeas corpus: The Supreme Court explained that a per se rule that "even attorney conduct that is grossly negligent can never warrant [equitable] tolling absent bad faith, dishonesty, divided loyalty, mental impairment or so forth on the lawyer's part," was "too rigid." Holland, 130 S. Ct. at 2563 (internal quotation marks omitted). But the Supreme Court in Gonzalez ruled that this kind of change in decisional law is not an extraordinary circumstance under Rule 60(b). "It is hardly extraordinary that . . . , th[e Supreme] Court arrived at a different interpretation" of the statute of limitations after our decision that Howell's petition was untimely. Gonzalez, 545 U.S. at 536, 125 S. Ct. at 2650.

Howell argues that Gonzalez does not govern his motion because the Supreme Court in that appeal also "placed heavy emphasis on the petitioner's 'lack of diligence' in failing to seek further review at the time that his original [] petition was denied," but the district court did not abuse its discretion when it read

10

Gonzalez to hold otherwise.  In Gonzalez, the Court explained that the prisoner had "abandoned any attempt to seek review of the District Court's decision on this statute-of-limitations issue" before the Court decided Artuz.  Gonzalez, 545 U.S. at 537, 125 S. Ct. at 2651.  "This lack of diligence confirm[ed] that Artuz [wa]s not an extraordinary circumstance justifying relief from the judgment in petitioner's case."  Id.  Gonzalez explained that the delay of the prisoner in that appeal "confirmed" that the change in the law was not extraordinary, not that the change in the law was not extraordinary because of the delay.  Id.  In this circumstance, we cannot say that the district court abused its discretion in denying Howell's motion.

## IV.  CONCLUSION

The denial of Howell's motion for relief from judgment is **AFFIRMED**.

BARKETT, Circuit Judge, specially concurring:

I agree that, under our precedent, it cannot be said that the district court abused its discretion in dismissing Mr. Howell's Rule 60(b)(6) motion. However, for the reasons articulated in my concurring opinion in *Hutchinson v. Florida,* 677 F.3d 1097 (11th Cir. 2012) (Barkett, J., concurring), I continue to believe that it is unjust and inequitable to require death row inmates to suffer the consequences of their attorneys' negligence. Moreover, this is another case where a state's wholly inadequate system for appointing or funding habeas counsel conspires with a thicket of complex state and federal habeas procedural rules to deny habeas petitioners the opportunity to have their substantive constitutional claims heard by a federal court. What results is a habeas system wherein unqualified and incompetent attorneys regularly fail to ably navigate the procedural waters established by state and federal statutes. This system, which consistently leads to death row inmates being denied an opportunity to present non-frivolous habeas claims, is, in my view, antithetical to the promise of habeas corpus enshrined in the Constitution.

Here, Mr. Howell appears to have colorable claims that both his trial attorney, who fabricated death threats to be excused from representing Mr. Howell, and his initial habeas attorney, who did not even contact Mr. Howell until *after* his federal habeas deadline had passed, were incompetent, ineffective, and deeply

12

unprofessional. I continue to believe that it is unconstitutional and immoral for death row inmates to lose a fundamental constitutional right because of their attorney's errors, especially when they are as egregious as those we deal with here.

JORDAN, Circuit Judge, concurring:

I concur in and join the Court's opinion. Because Mr. Howell asserts that he would be the first person in Florida to be executed without having his federal habeas petition reviewed on the merits, I write separately. In my view, Mr. Howell would not have been entitled to relief even if the three claims raised in his petition received full federal habeas review.

## I

Mr. Howell argues that his trial counsel, Frank Sheffield, Esq., rendered ineffective assistance because he failed to present an "intervening cause" defense at either the guilt or penalty phases of his trial. Mr. Howell contends that there was a reasonable probability that the jury would have acquitted him, convicted him of a lesser-included-offense, or recommended a sentence of life imprisonment had Mr. Sheffield presented evidence that Trooper Fulford violated Florida Highway Patrol policy by opening the package containing the bomb-rigged microwave oven. According to Mr. Howell, Trooper Fulford's actions were an unforeseeable, intervening cause that broke the chain of causation and either nullified specific intent entirely or mitigated culpability.

In order to prevail on this claim, Mr. Howell "must show that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 658, 687, 104 S. Ct. 2052, 2064

14

(1984). On a § 2254 petition, we conduct a deferential review of the state court's adjudication of the performance and prejudice prongs of *Strickland*, such that relief is only warranted if the state court's decision was "contrary to, or involved an unreasonable application of," clearly established federal law, as determined by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d). And our review of counsel's performance garners an additional level of deference because "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689, 103 S. Ct. at 2065. *See also Evans v. Sec'y, Dep't of Corr.*, 703 F.3d 1316, 1333-36 (11th Cir. 2013) (Jordan, J., concurring) (explaining that under AEDPA "doubly deferential" review applies to the performance prong, but not the prejudice prong, of *Strickland*).

As to performance, Mr. Howell has failed to explain how Mr. Sheffield's decision to forego an "intervening cause" defense amounts to anything more than a rational strategic choice made after careful consideration. For example, at the evidentiary hearing on Mr. Howell's state post-conviction petition, Mr. Sheffield testified that he discussed that particular defense with Mr. Howell before trial, and that he ultimately came to the conclusion that it would likely backfire and hurt Mr. Howell's chances for an acquittal. *See* Transcript of Evidentiary Hearing on Mr. Howell's State Habeas Petition at 21 ("I made a judgment call that . . . if I went in

15

and tried to, in effect, blame Trooper Fulford for his own death that it would not be a viable defense; and, in fact, it would hurt Mr. Howell's chances."). Mr. Sheffield also explained that he declined to present this defense as a non-statutory mitigator during the penalty phase because he believed that it would be seen as an attempt to blame Trooper Fulford for his own death and "inflame the jury." *See id*. at 24. These decisions were reasonable professional judgments under the circumstances of this case, and thus cannot rise to the level of constitutionally deficient performance. *See Strickland*, 466 U.S. at 690, 103 S. Ct. at 2066 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . .").

With respect to prejudice, Mr. Howell conceded in his state post-conviction proceeding that Trooper Fulford's actions "would not have been an intervening cause as a matter of law . . . ." *Howell v. State*, 877 So. 2d 697, 703 (Fla. 2004). I agree with the Florida Supreme Court's assessment that such a defense or theory, even if asserted, would have had a "low probability of success, combined with the tremendous potential for alienating the jury by blaming [Trooper Fulford] for his own death . . . ." *Id*. at 703-04. Such a remote probability of success does not meet the standard for prejudice articulated in *Strickland*. *See* 466 U.S. at 694, 104 S. Ct. at 2068 ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

16

different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.").

In sum, Mr. Howell has not established deficient performance or prejudice. This ineffective assistance of counsel claim therefore fails on the merits.

## II

Mr. Howell contends that the penalty phase of his trial violated the Sixth Amendment because it was the trial court—with only a sentencing recommendation from the jury—which made the necessary findings of fact to impose the death penalty. He believes that this type of sentencing procedure, codified at Fla. Stat. § 921.141 (1993), is unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000), and *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428 (2002). *Ring* and *Apprendi*, however, are not applicable here. Mr. Howell's sentencing occurred in 1994, years before *Apprendi* and *Ring*. And neither decision has been held to be retroactive. *See Schriro v. Summerlin*, 542 U.S. 348, 358, 124 S. Ct. 2519, 2526 (2004) ("*Ring* announced a new procedural rule that does not apply retroactively to cases already final on direct review."); *McCoy v. United States*, 266 F.3d 1245, 1258 (11th Cir. 2001) ("Therefore, like these other circuits, we hold that the new constitutional rule of criminal procedure announced in *Apprendi* does not apply retroactively on collateral review.").

17

Nevertheless, Mr. Howell contends that he should be able to rely on *Apprendi* and *Ring* because *Blakely v. Washington*, 542 U.S. 296, 125 S. Ct. 2531 (2004), expanded and clarified *Apprendi* and the Supreme Court has yet to decide whether *Blakely* is retroactive. Unfortunately for Mr. Howell, his *Blakely* argument is now foreclosed by our precedent. *See Varela v. United States*, 400 F.3d 864, 866-68 (11th Cir. 2005) (holding that *Blakely* and *United States v. Booker*, 542 U.S. 220, 125 S. Ct. 738 (2005), are not retroactive on collateral review). Thus, Mr. Howell is not entitled to relief on his *Apprendi*/*Ring* claim.

### III

Mr. Howell asserts that he was denied effective assistance of counsel because Mr. Sheffield had a conflict of interest and was not removed as his attorney. When a defendant asserts a conflict of interest claim, we are not always required to conduct the two-step analysis under *Strickland* for ineffective assistance of counsel. *See Burger v. Kemp*, 483 U.S. 776, 783, 107 S. Ct. 3114, 3120 (1987). Instead, prejudice can be presumed, but "only if a defendant demonstrates that his attorney actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance." *Id.* (internal quotation marks omitted). In his petition, Mr. Howell cites to three separate occasions where he contends a conflict of interest arose. First, Mr. Sheffield allegedly had a conflict based upon allegations that an anonymous threat

18

was made to his law office. Second, Mr. Howell and Mr. Sheffield disagreed over the defense's strategy. Third, Mr. Sheffield consulted, during jury selection, with an attorney who represented one of Mr. Howell's co-defendants. I address each of these purported conflicts below.

## A

Initially, Mr. Sheffield was appointed to represent Mr. Howell in both his federal and state criminal prosecutions. In January of 1993, before the federal trial began, Mr. Sheffield's wife claimed that she received a call at the office, in which the caller stated, "[I]f Paul Howell goes down, Mr. Sheffield is going down also." Appellant's Brief at 4. Mr. Sheffield contacted law enforcement officials, who began to investigate the claim. In addition, he petitioned to withdraw from Mr. Howell's federal case, citing his concerns for his family's safety and his difficulties in communicating with his client. The federal district court granted Mr. Sheffield's request, and William Pfeiffer, Esq., was appointed in his place. Law enforcement later concluded, following an investigation into the matter, that no threatening call had actually been made to Mr. Sheffield's office.

On March 15, 1993, Mr. Howell sent a letter to the state trial court. He claimed that Mr. Sheffield was ineffective due to a failure to communicate and a lack of trust. He also requested that the substitute federal counsel, Mr. Pfeiffer, be appointed as substitute counsel for his state death penalty case. Three days later,

the state filed a motion to disqualify Mr. Sheffield. The motion referenced the threatening phone call and statements by Mr. Sheffield that Mr. Howell was being uncooperative. The trial court held a hearing "to determine whether or not there [was] reasonable cause to believe that [Mr. Sheffield was] not rendering effective assistance to [Mr. Howell]." *Nelson v. State*, 274 So. 2d 256, 258 (Fla. 1973) (recommending such an inquiry whenever a defendant makes it known that he or she desires to discharge appointed counsel).

At the hearing, Mr. Sheffield indicated that he had no outstanding safety concerns and was willing to continue representing Mr. Howell. He also informed the trial court about his experience with death penalty cases and pointed out that Mr. Pfeiffer had never tried a capital case. The trial court then asked Mr. Howell for his views regarding Mr. Sheffield's representation. Mr. Howell said that he did not want Mr. Sheffield to represent him because Mr. Sheffield had failed to share certain discovery matters with him. The trial court heard argument from all parties, and denied the motion to disqualify Mr. Sheffield based on its findings that (1) Mr. Sheffield was not removed from the federal case for lack of diligence; (2) there was no basis to question his performance in this case; and (3) Mr. Howell's preferred replacement had no prior death penalty experience.

On June 4, 1993, the state filed a motion for rehearing and attached the transcript from the hearing on Mr. Sheffield's motion to withdraw in federal court.

Those transcripts provided additional information about the alleged threat, Mr. Sheffield's safety concerns at the time, and Mr. Sheffield's belief that he could not ethically represent Mr. Howell in the federal case under those circumstances. The trial court held a hearing to discuss this additional evidence on November 19, 1993. At the hearing, Mr. Sheffield acknowledged that he had difficulties communicating with Mr. Howell on discovery matters in the federal case and that the alleged telephone threat led to his request to withdraw. But he stated that there were no such communication issues in the state case,[1] and he no longer had concerns for his safety. *See Howell v. State*, 707 So. 2d 674, 678 (Fla. 1998) (quoting Mr. Sheffield's statement at the hearing: "Since that time, Mr. Howell and I have communicated with one another. We are getting discovery. We have taken depositions. . . . [A]nd the problems that were occurring at that time in the federal case no longer exist.").

Mr. Howell also testified at the hearing. He indicated that there were still concerns in the wake of the alleged phone threat because Mr. Howell's family members were upset by insinuations that they may have orchestrated the whole thing. In response, Mr. Sheffield said that he did not share these concerns and that

---

[1] Mr. Sheffield explained at the hearing that the improved attorney-client communication in the state capital case resulted from differences between the state and federal discovery procedures. *Compare* FED. R. CRIM. P. 16, *with* FLA. R. CRIM. P. 3.220. In his view, the attorney-client relationship was strained in the federal case due to Mr. Howell's perception that Mr. Sheffield was continuously served with requested discovery disclosures, but could not obtain certain desired discovery from the government because of the Jencks Act, 18 U.S.C. § 3500(a).

they would not impact his ability to represent Mr. Howell. Based on this testimony, the trial court found that (1) "[Mr. Howell] and Mr. Sheffield appear[ed] to be able to communicate," (2) "Mr. Sheffield [was] probably as good [an attorney] as [Mr. Howell was] going to get," and (3) "it would certainly be to [Mr. Howell's] benefit to have [Mr. Sheffield] represent [him]." *Id.* at 679. The trial court did, however, give Mr. Howell an opportunity to respond, and Mr. Howell only said that he left the decision to the court. At that point, the trial court concluded that there was "no reason to disqualify Mr. Sheffield from representing Mr. Howell" and denied the state's motion for rehearing. *Id.* That decision was later upheld by the Florida Supreme Court. *See id.* at 677-79.

In my view, the Florida Supreme Court's decision on this issue was not an unreasonable application of Supreme Court precedent necessitating reversal under the applicable deferential standard. Habeas relief would only be warranted if Mr. Howell "demonstrate[d] that an actual conflict of interest existed that adversely affected [Mr. Sheffield's] performance." *See Burger*, 483 U.S. at 783, 107 S. Ct. at 3120. And, on this record, Mr. Howell did not meet that burden. First, Mr. Howell did not rebut—by clear and convincing evidence—the state court's factual finding that it was "evident that any apprehension that [Mr.] Sheffield had concerning the bomb threat which had allegedly occurred some nine months before had dissipated." *Howell*, 707 So. 2d at 679. Mr. Howell attempted to challenge this

22

finding by pointing to statements made by Mr. Sheffield at the time of the federal trial. But those statements cannot serve as clear and convincing evidence of Mr. Sheffield's state of mind approximately nine months later, especially when Mr. Sheffield provided sworn testimony that he no longer had those concerns. Second, Mr. Howell cites to no evidence in the record that shows how the anonymous threat actually impacted Mr. Sheffield's performance in the state capital case. He did not, for example, demonstrate that Mr. Sheffield made a choice between possible alternative courses of action that went against his own interests or that the choice was motivated by the anonymous phone threat. *See, e.g., Smith v. White*, 815 F.2d 1401, 1404 (11th Cir. 1987) (articulating standard for establishing actual conflict of interest).

Instead, Mr. Howell relies on the presumption that, because the federal district court determined that Mr. Sheffield had a conflict of interest, the state trial court necessarily had to reach the same conclusion. *See* Habeas Corpus Petition [D.E. 2] at 19 ("This determination had already been made by the Federal court judge. It is preposterous to assume that the conflict was only in that courtroom and did not extend to the state court as well."). But this argument, if anything, only establishes that there was a mere possibility of a conflict of interest in Mr. Howell's state court case. And that does not suffice to make out a Sixth Amendment violation. *See Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S. Ct. 1708,

23

1719 (1980) ("We hold that the possibility of conflict is insufficient to impugn a criminal conviction."). Habeas relief, therefore, is not warranted on this claim.

**B**

In September of 1994, Mr. Sheffield filed a motion claiming that Mr. Howell was incompetent to proceed to trial because Mr. Sheffield believed that an insanity defense was Mr. Howell's only viable option. Mr. Howell, however, did not want to pursue an insanity defense. At a hearing, the trial court concluded that Mr. Howell had competently indicated that he did not want to pursue an insanity defense, and that the decision on whether to do so was ultimately his to make. Mr. Sheffield agreed to abandon the insanity defense.

On the eve of trial, Mr. Howell wrote a letter to the trial court questioning Mr. Sheffield's ability to provide effective representation due to irreconcilable differences stemming from Mr. Sheffield's prior insistence on relying on an insanity defense. The trial court found that Mr. Howell's concerns had already been addressed, Mr. Sheffield had agreed to adhere to Mr. Howell's preference to forego an insanity defense, and, consequently, there was no basis to replace Mr. Sheffield. The case then proceeded to trial.

At trial, Mr. Howell again complained to the trial court about Mr. Sheffield's performance. He believed that Mr. Sheffield was unprepared and ignored his suggestions. Mr. Sheffield responded that, in his professional judgment, it was not

24

beneficial to challenge certain evidence, as Mr. Howell wished, because that evidence would later come in anyway. The trial court informed Mr. Howell that Mr. Sheffield's approach was not uncommon in criminal cases and concluded that there was no need to appoint new counsel.

Mr. Howell argues that these disputes with Mr. Sheffield over defense strategy created a conflict of interest, which made it necessary for the trial court to appoint new counsel. I disagree. At most, Mr. Howell has shown that he was dissatisfied with Mr. Sheffield's strategic and tactical decisions. But dissatisfaction alone is not sufficient to create a conflict of interest. *See Blanco v. Wainwright*, 507 So. 2d 1377, 1383 (Fla. 1987) (holding that "disagreements over whether to call certain witnesses" did not constitute a conflict of interest). *Accord Oimen v. McCaughtry*, 130 F.3d 809, 812 (7th Cir. 1997) ("That is not a conflict of interest; it is a disagreement over strategy."); *United States v. Leggett*, 81 F.3d 220, 227 (D.C. Cir. 1996) ("[W]e are unpersuaded by [the petitioner's] further attempt to style his disagreement with counsel over trial tactics as a 'conflict of interest.'"); *Stenson v. Lambert*, 504 F.3d 873, 886 (9th Cir. 2007) ("We can find no clearly established Supreme Court precedent holding that [a disagreement over trial strategy] amounts to an actual conflict of interest."); *United States v. Jones*, 662 F.3d 1018, 1026-27 (8th Cir. 2011) ("[The Sixth Amendment] is not violated by general dissatisfaction or disagreements over strategy . . . .").

25

Because these disagreements with Mr. Sheffield did not create a conflict of interest, Mr. Howell is only entitled to relief if he can establish prejudice under *Strickland*. *See Burger*, 483 U.S. at 783, 107 S. Ct. at 3120 (holding that prejudice is only presumed if there is proof of an actual conflict of interest). In my opinion, Mr. Howell has not met that burden. In his habeas petition, Mr. Howell does not explain how, if at all, these disagreements impacted his trial. There is no contention, for example, that Mr. Sheffield ignored Mr. Howell's wishes and attempted to put on an unsuccessful insanity defense at trial. Or that Mr. Sheffield failed to object to the admission of prejudicial evidence that otherwise would have been excluded. Under these circumstances, the trial court did not err in declining to appoint new counsel. *See United States v. Young*, 482 F.2d 993, 995 (5th Cir. 1973) ("Unless a Sixth Amendment violation is shown, whether to appoint a different lawyer for an indigent criminal defendant who expresses dissatisfaction with his court-appointed counsel is a matter committed to the sound discretion of the district court."); *Thomas v. Wainwright*, 767 F.2d 738, 742 (11th Cir. 1985) ("A defendant's general loss of confidence or trust in his counsel, standing alone, is not sufficient [to establish good cause for substitution of counsel]."). Relief is not warranted on this claim.

26

## C

During jury selection for Mr. Howell's state trial, the state noted for the record that Mr. Sheffield had consulted with Robert Rand, Esq., the attorney for co-defendant Patrick Howell,[2] on jury challenges. Mr. Sheffield explained that he had sought Mr. Rand's assistance because the state court declined to appoint a second lawyer to help him with Mr. Howell's case. The trial court recognized the possible conflict of interest, and asked Mr. Howell for his views on the issue.[3] Mr. Howell stated that he had "no problem" with Mr. Rand's involvement and that it was his desire that Mr. Rand be allowed to assist Mr. Sheffield. There is no indication that Mr. Rand's assistance extended beyond jury selection.

As an initial matter, I note that the Florida Supreme Court failed to address this claim when it reviewed Mr. Howell's state post-conviction petition. *See Howell*, 707 So. 2d at 677-81. The claim, therefore, "is not subject to the deferential standard that applies under AEDPA" and "is reviewed *de novo*." *Cone v. Bell*, 556 U.S. 449, 472, 129 S. Ct. 1769, 1784 (2009). *See also* 28 U.S.C. § 2254(d) (stating that AEDPA deference applies "with respect to any claim that was adjudicated on the merits in State court proceedings").

---

[2] Mr. Howell and Patrick Howell are brothers.

[3] The trial court found that Mr. Howell and his brother had differing interests and noted that the two men had previously gotten into a physical altercation in the courtroom. At the time of jury selection in Mr. Howell's case, Patrick had entered into a plea agreement.

27

Nevertheless, it is my view that, under these facts, Mr. Howell waived any claim to ineffective assistance of counsel based on Mr. Rand's involvement in jury selection. *See United States v. Rodriguez*, 982 F.2d 474, 477 (11th Cir. 1993) ("A defendant may waive [his Sixth Amendment right] by choosing to proceed to trial with an attorney who has an adverse conflict of interest."). The record shows that the trial court informed Mr. Howell of the potential conflict, made appropriate inquiries, and gave him the option to prevent Mr. Sheffield from consulting with Mr. Rand, which would have eliminated any conflict of interest. In response to that offer, Mr. Howell provided a waiver that was "clear, unequivocal, and unambiguous . . . ." *United States v. Petz*, 764 F.2d 1390, 1392 (11th Cir. 1985) (quoting *United States v. Garcia,* 517 F.2d 272, 278 (5th Cir. 1975)). As a result, Mr. Howell cannot obtain relief on this claim.

## IV

In sum, Mr. Howell would not be entitled to habeas relief on any of the claims raised in his federal petition, even if they were adjudicated on the merits.