[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-15004
Non-Argument Calendar
_____

D.C. Docket No. 9:13-cr-80001-KAM-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHN ANTONARAS,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 29, 2015)

Before WILLIAM PRYOR, JORDAN and JILL PRYOR, Circuit Judges.

PER CURIAM:

John Antonaras appeals his convictions and sentence of 54 months of imprisonment for one count of conspiring to commit bank fraud, 18 U.S.C. §§ 1344, 1349, and five counts of making false statements on applications for business loans for David Demayo and Michael Mangra, *id.* § 1014. Antonaras challenges the admission of evidence about his preparation of false tax returns for which he was not charged and of a recording of his conversation with a coconspirator. Antonaras also challenges a jury instruction about liability for coconspirators' actions, *see Pinkerton v. United States*, 328 U.S. 640, 66 S. Ct. 1180 (1946), and the enhancement of his sentence for the use of sophisticated means, United States Sentencing Guidelines Manual § 2B1.1(b)(10)(C), and, for the first time, for his use of a special skill, *id.* § 3B1.3. We affirm.

The district court did not abuse its discretion when it admitted testimony from coconspirator Naveen Saddi about false tax returns that Antonaras prepared for Greg Gardner and for Hal and Helene Unschuld. Antonaras, a certified public accountant, prepared false tax returns for David Demayo and Michael Mangra as part of a conspiracy to obtain business loans through a scheme to defraud the lenders. Saddi's testimony about false tax returns that Antonaras prepared for Gardner and the Unschulds explained "the chain of events explaining the context, motive, and set-up of [Antonaras's] crime, . . . form[ed] an integral and natural . . . account of the crime, . . . [and] complete[d] the story of the crime for the jury."

2

*United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998) (quoting *United States v. Williford*, 764 F.2d 1493, 1499 (11th Cir. 1985)). Saddi, who completed fraudulent loan applications for the conspiracy, testified that he included Antonaras in the scheme to defraud after he prepared and signed false tax returns for Gardner that withstood screening by loan officers. Because Antonaras successfully used a sophisticated method to allocate inflated income between wages and corporate distributions, Saddi referred a client, Demayo, to Antonaras. After Demayo also obtained a business loan, Saddi had Antonaras prepare false tax returns for Mangra and the Unschulds. Antonaras argues that the Unschulds' false tax returns should have been excluded because they were prepared after the timeframe alleged in the indictment, but those returns were substantially similar to other false returns that Antonaras prepared and were admissible to prove that he knowingly participated in the conspiracy and to refute his defense that someone else applied his certification stamp to the returns. *See* Fed. R. Evid. 404(b). Antonaras argues that the evidence about Gardner's and the Unschulds' returns was unduly prejudicial, but the district court eliminated any potential prejudice by instructing the jury during Saddi's testimony and at the end of the case that the evidence could only be used "to decide whether . . . Antonaras had the state of mind or intent necessary . . . [or] a motive or the opportunity to commit the acts charged; [if] he acted in accordance with . . . a plan or in preparing to commit a crime; or [if] he committed the acts

3

charged in the indictment by accident or mistake." *See United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007).

The district court also did not abuse its discretion when it admitted a recording of a conversation between Antonaras and Gardner. The recording was admissible under the exception to the hearsay rule for statements offered against an opposing party that was made by him in his individual capacity. *See* Fed. R. Evid. 801(d)(2)(A). Although the two men briefly discussed prospective fraudulent loans, the conversation proved Antonaras's involvement in making false returns for the Unschulds, Mangra, and Demayo. *See* Fed. R. Evid. 404(b). Antonaras stated that he "[did not] mind . . . doing things for certain clients" like "Mr. Unschuld" by "do[ing] the numbers to make it work" when "they don't have the numbers"; he knew that Mangra added his name to his brother's medical practice to obtain a loan, and he was uncomfortable doing business with Demayo. Antonaras argues that the recording is an "idle conversation between former coconspirators [three years] after the conspiracy ended that should not have been admitted . . . [under] *United States v. Phillip*[*s*], 664 F.2d 971 (5th Cir. 1981)," but *Phillips* prohibits the admission of a "retrospective statement" by a coconspirator under Federal Rule of Evidence 801(d)(2)(E).

Antonaras argues that the district court should not have instructed the jury that he could be vicariously liable for false statements made by his coconspirators,

4

but this argument fails. A defendant is liable for all reasonably foreseeable offenses committed by coconspirators during and in furtherance of the conspiracy. *Pinkerton*, 328 U.S. at 645–48, 66 S. Ct. at 1183–84. Because the issue of foreseeability is a question for the jury, we affirm the use of a *Pinkerton* instruction when the evidence was sufficient for a reasonable jury to find beyond a reasonable doubt that it was a reasonably foreseeable consequence of the conspiracy that a coconspirator would make a false statement. *See United States v. Mothersill*, 87 F.3d 1214, 1217 (11th Cir. 1996). Antonaras conspired to defraud banks by fraudulently obtaining loans, and it was reasonably foreseeable that his coconspirators would make false statements in furtherance of that scheme. Antonaras argues that he could not have foreseen that his coconspirators would reuse false tax returns that he prepared for Demayo and Mangra, but Antonaras declined to impose any restrictions on using the returns when given an opportunity to do so. Demayo testified that when he divulged his plan to apply for two loans and asked if there were limits on using the false tax returns, Antonaras "said he didn't care" and it "[d]idn't matter" to him. And Antonaras referred Mangra to Saddi; attended a meeting in which Mangra and Saddi discussed obtaining fraudulent loans; and Antonaras exacted a $6,000 commission for referring Mangra to Saddi.

5

The district court did not abuse its discretion when it enhanced Antonaras's offense level for use of sophisticated means. Antonaras was subject to a two level increase in his offense level because the conspiracy involved "especially complex or especially intricate offense conduct . . . to . . . execut[e] or conceal[] . . . [the] offense." *See* U.S.S.G. § 2B1.1(b)(10)(C) & cmt. n.9(B). The conspiracy submitted fraudulent applications for business loans; created numerous false financial documents to support the fraudulent applications; modified articles of incorporation and other business formation documents to add owners with better credit ratings; opened bank accounts using borrowed funds to prove creditworthiness; bribed a bank officer to assist in processing and approving the loans; and laundered the loan proceeds. *See United States v. Barrington*, 648 F.3d 1178, 1199 (11th Cir. 2011).

The district court also did not plainly err by enhancing Antonaras's sentence for his "use[ of] a special skill[] in a manner that significantly facilitated the commission or concealment of the offense." *See id.* § 3B1.3 & cmt. n.4. Antonaras used his skills as an accountant to prepare false tax returns that accounted credibly for the inflated income on the fraudulent loan applications. Antonaras also created stock account statements to substantiate dividends reported on the false tax returns; W-2 forms that overstated the incomes of the borrowers; and corporate tax returns,

6

balance sheets, and income statements that listed concocted earnings and expenses to make the businesses eligible for large loans.

The district court also did not plainly err by applying cumulatively the sophisticated means and special skill enhancements. The Sentencing Guidelines state that "enhancements . . . are to be applied cumulatively . . . [a]bsent an instruction to the contrary," U.S.S.G. § 1B1.1 cmt. n.4(B). "Impermissible double counting occurs only when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." *United States v. Flanders*, 752 F.3d 1317, 1340 (11th Cir. 2014) (quoting *United States v. Webb*, 665 F.3d 1380, 1382 (11th Cir. 2012)). Antonaras fails to cite any facts or authority suggesting that the cumulative application of the enhancements constitutes impermissible double counting.

We **AFFIRM** Antonaras's convictions and sentence.

7